MADDOX, Justice.
The Teachers’ Retirement System of Alabama (TRS) appeals from a summary judgment granted to plaintiffs Helen C. McKin-non and William R. McKinnon, Jr., widow and son of William R. McKinnon, Sr., deceased, who was a member of TRS. The trial court, finding the retirement system statutes discriminatory as between retired employees and active employees, ordered TRS to pay plaintiffs a “lump sum” benefit equal to the deceased teacher’s contributions and interest in the fund.
The facts were stipulated. William R. McKinnon, Sr., was a school teacher for some twenty-five years. In April, 1975, he filed an application for service retirement with TRS. (See Appendix A.)
TRS sent McKinnon a form containing retirement allowance estimates and a place for him to indicate which retirement benefit he elected. (See Appendix B.)
The effective date of McKinnon’s retirement was June 1, 1975. On June 18, 1975, the secretary-treasurer of TRS sent McKin-non a letter which contained certain tax information and other data regarding his benefits. (See Appendix C.)
On June 30, 1975, McKinnon died. TRS considered McKinnon’s election of the “Maximum Retirement Benefit” as final and binding, and claimed it was bound to pay to McKinnon’s son, the designated beneficiary, only a prorata amount for the number of days in the month in which McKinnon survived after his effective date of retirement. Since McKinnon retired effective June 1, 1975, and died on June 30, 1975, TRS claimed his beneficiary was entitled to be paid the retirement allowance for one month, or $503.94.
In October, 1975, Helen Chapman McKin-non and William R. McKinnon, Jr., surviving spouse and son, filed an action in the Circuit Court for Jefferson County. They alleged that, pursuant to Title 52, § 366(4), Code, 1940, as amended, they were entitled to a retirement allowance under Option 3. Alternatively, they alleged that McKinnon, Sr., was under the mistaken belief that the maximum retirement benefit would be paid *571 to his son in the event of his death. Finally, they alleged that the construction placed on the statute by TRS was violative of the equal protection and due process clauses of the Constitution of the United States and of Article 1, Section 6 of the Alabama Constitution.
In February, 1976, the action was transferred to the Circuit Court for Montgomery County. The McKinnons filed a motion for summary judgment in November, 1976, and after a hearing was held on the motion, the court below granted the motion. The court concluded, in part:
“The Court concludes from the review of the evidence and the law applicable to the evidence that the construction relied upon by the State, if adopted and enforced, would be an arbitrary and capricious exercise of power and would accomplish an unlawful and unconstitutional discrimination between classes of employees without just basis. The statute applicable to the Teacher’s Retirement System does not provide for any of the retirement benefits of a retired teacher to cease at death. Two provisions in the statute do allow for an employee, upon cessation of employment, and an employee’s spouse before the employee’s retirement, upon death, to receive his or her contributions upon cessation of employment or death. To hold that an employee (or his spouse) who had reached retirement and who died before receiving his benefits was not entitled to any benefits, and that a teacher with only one year of tenure or one who had not reached retirement, was entitled to all contributions is an arbitrary, unjust and invidious discrimination in favor of one class against the other. Equal protection of the laws would be denied and the earned property right of the retired employee, or his spouse financed in large part by the employee’s contributions, would be taken without due process of law.
“The construction for which the defendant contends would disregard the beneficial spirit and purpose for which retirement benefits and pension plans are adopted. This Court would be loathe to conclude that the legislature intended to do what the defendant contends was its intentions to do, and fortunately this Court is clearly of the opinion that the legislature did not so intend. The Teacher’s Retirement System of Alabama and pension plans in general, are not designed as business ventures or moneymaking syndicates, but rather to provide for the security of faithful servants to the education of our young; to improve their moral (sic) and to give them peace of mind in their dedication to public service. The Courts generally recognize this objective and provide that such laws shall be liberally construed with a view of promoting the object for which they were adopted. A narrow, arbitrary or literal interpretation will not be permitted to defeat the objective for which such legislation is adopted. Collins v. City of Knoxville, [180 Tenn. 483], 176 S.W.2d 809 [808] (Tenn., 1944); Fulton County v. Hollin [Holland, 71 Ga.App. 455], 31 S.E.2d 202 (Ga., 1944).
“In the interpretation of a statute, the Courts will be strongly influenced by its spirit and intention. Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596 (1962).
“The Court is clearly of the opinion that the intention of the statute was not to allow the system to benefit in such a situation and cannot be contended that plaintiffs are not entitled to the contributions. It is, therefore,
“ORDERED, ADJUDGED and DECREED by the Court as follows:
“1. Title 52, § 362 et seq., Code of Alabama as last amended, should be and is construed to mean that the benefits available to a retired member shall not cease at death, and like any other active member of the retirement system, shall have the right to the total amount of contributions.
“2. Consistent with the above interpretation, and the intention of the retired member, the plaintiffs are entitled to receive the retirement benefits in a lump sum.
“3. That the Teacher’s Retirement System of Alabama be and hereby is directed to process and approve the claim of the plaintiffs and to pay to the plaintiffs the *572 lump-sum benefits, including the contributions, including interest at 6% thereon from the date of the claim.”
It is from the order granting the plaintiffs’ motion for summary judgment that this appeal is taken.
We reverse and remand.
As we construe the trial judge’s order, he concluded that benefits available to a retired member who has selected the “retirement allowance” do not cease at death, but continue at least until the retired member, his estate or his beneficiaries, have received his accumulated contributions. This interpretation does not comport with the statutory scheme and is erroneous.
The legislature has conveniently set out in Title 52, § 362, Code, definitions of statutory words we will be considering on this appeal. Section 362, in part, provides:
“ * * * ‘Member’ shall mean any teacher included in the membership of the system as provided in section 364 of this title. ‘Board of control’ shall mean the board provided for in section 367 of this title to administer the retirement system. * * * ‘Trustees’ shall mean the members of the board of control, to administer the trust funds. * * * ‘Beneficiary’ shall mean any person in receipt of a pension, an annuity, a retirement allowance, or other benefit as provided by this chapter. * * * ‘Annuity’ shall mean payments for life derived from the ‘accumulated contributions’ of a member. All annuities shall be payable in equal monthly installments. ‘Pension’ shall mean payments for life, derived from money provided by the employer. All pensions shall be payable in equal monthly installments. ‘Retirement allowance’ shall mean the sum of the ‘annuity’ and the ‘pension.’ ‘Retirement’ shall mean withdrawal from active service with a retirement allowance or optional benefit in lieu thereof granted under the provisions of this chapter. . ” [Emphasis added.]
Section 366(2)(a) and (b) provide:
“ * * * (2) Upon retirement from service a member shall receive a service retirement allowance which shall consist of:
“(a) An annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement; and
“(b) A pension which shall be equal to the annuity allowable at age of retirement, but not to exceed an annuity allowable at sixty-five computed on the basis of contributions made prior to the attainment of age sixty-five; . . . ”
Section 366(4) provides:
“(4) With the provision that no election of an option shall be effective until the end of the month following the effective date of retirement, and that should a beneficiary die before his first benefit payment is due at the end of the month following the effective date of retirement, he shall be considered as an active member at the time of death, any member may elect prior to retirement to receive, in lieu of his retirement allowance payable throughout life the actuarial equivalent at that time of his retirement allowance in a reduced retirement allowance payable throughout life with the provision that: Option 1. If he dies beT fore he has received in annuity payments the present value of his annuity as it was at the time of his retirement, the balance shall be paid to his legal representatives or to such person as he shall nominate by written designation duly acknowledged and filed with the board of control; or Option 2. Upon his death, his reduced retirement allowance shall be continued throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the board of control at the time of his retirement; or Option 3. Upon his death, one-half of his reduced retirement allowance shall be continued throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the board of control at the time of his retirement; or Option 4. Some other benefit *573 or benefits shall be paid either to the member or to such person or persons as he shall nominate, provided such other benefit or benefits, together with the reduced retirement allowance, shall be certified by the actuary to be of equivalent actuarial value to his retirement allowance and shall be approved by the board of control.”
The statutory scheme, using the legislative definitions, provides that an active member, provided he meets all other requirements, may retire and may receive a “retirement allowance” or an “optional benefit in lieu thereof.” If a member selects the maximum benefit allowance, the statute specifically provides that the payments are “for life.” A “retirement allowance” is paid for life and does cease at death.
If the member selects an option in lieu of the “retirement allowance,” a reduced “retirement allowance” is payable to the member during his life and to the member’s surviving spouse or beneficiaries. This statutory scheme is covered by Title 52, § 366(4).
We hold that if a member dies after having made an election to receive a “retirement benefit,” whether before the first benefit payment is due, or afterwards, that member’s benefits cease at this death. However, if a member elects to receive “an optional benefit in lieu [of the retirement allowance],” then the benefits are payable as provided for in § 366(4).
This section provides that a member shall be “considered as an active member” if he dies before the “end of the month following the effective date of his retirement.”
If an active member who is eligible for service retirement dies before making an election, § 366(3)(b) provides:
“(b) In case of the death of a member eligible for service retirement pursuant to subsection (1) of this section, an allowance shall be paid to the surviving spouse in an amount that would have been payable if the member had retired immediately prior to his death and had elected Option 3, as set forth in subsection (4) of this section . . ..”
We are careful not to determine the factual dispute whether McKinnon was “mistaken” when he marked the block “Maximum retirement allowance.” There is some evidence that he was confused when he filled out the form. We note that when he filled out his application for service retirement on April 29,1975, he first marked the block for a maximum retirement allowance but crossed that out and asked for information about benefits payable under “Option Number 1.” The question of what McKin-non actually intended is not completely clear.
On remand, the parties can further develop the factual issue whether McKin-non factually intended to select the maximum retirement allowance or an option in lieu of the retirement allowance. If the trial court determines on remand that McKinnon intended to select one of the options, then in that event, it is the law that he made the selection with the condition attached that if he died before the end of the month following the effective date of retirement, which he did, an allowance would be paid to the surviving spouse “in an amount that would have been payable if the member had retired immediately prior to his death and had elected Option 3.
TRS argues that the McKinnons, by failing to cross-appeal, cannot raise the question whether McKinnon intended to elect an optional benefit in lieu of the retirement allowance. TRS cites Holczstein v. Bessemer Trust & Savings Bank, 223 Ala. 271, 136 So. 409 (1931) to support its argument that McKinnon’s signature on the application cannot be impeached unless it was guilty of fraud or misrepresentation. We refuse to apply these rules of contract law to the state retirement system. The legislature refers to the Board of Control as “Trustees” and to the funds they administer as “trust funds.” The legislative intent obviously is such that members are not expected to deal at arms length with the Board of Control. In fact, the converse would be more apt. The obligation is upon *574 the Board of Control to adopt procedures which will aid members in making a knowledgeable and informed election.
Furthermore, the Board of Control should try to ascertain the intent of its members when they apply and carry out that intent, if allowed by law, so that the members will receive all benefits provided by law.
We hold that the McKinnons are not foreclosed from showing that the deceased member did not intend to elect an option in lieu of the “retirement allowance.” On the other hand, TRS is not foreclosed from showing that the deceased member intended to elect the “Maximum retirement allowance.”
REVERSED AND REMANDED.
TORBERT, C. J., and FAULKNER, SHORES and BEATTY, JJ., concur.
APPENDIX “A’

*575 APPENDIX “B"

Appendix “C” to follow.
*576 APPENDIX “C”