Annie Ruth Jackson filed an action seeking to have a power of attorney executed by Bloise Oden in favor of his granddaughter, Theresa Morris, set aside. In that action, Jackson alleged that Bloise Oden was incompetent at the time he signed the power of attorney and that Morris had exercised undue influence over him. Jimmy Oden, Bloise Oden's grandson, later joined the action as a plaintiff. Both Jackson and Jimmy Oden sought the return of certain amounts they alleged Morris had improperly removed from Bloise Oden's bank accounts. Two banks were initially named as defendants, but at trial they were dismissed on the stipulation of the parties.
The trial court entered an order finding that Bloise Oden was incompetent when he signed the power of attorney and that he had been subjected to undue influence in regard to his signing it. The trial court entered a judgment ordering Morris to pay $7,000 plus interest to Jackson and $2,700 plus interest to Jimmy Oden. Morris appealed.
Where the trial court is presented with ore tenus evidence, its findings of fact based on that evidence are entitled to a presumption of correctness on appeal; its judgment will not be reversed unless it is clearly erroneous and against the great weight of the evidence. Craig v. Perry, 565 So.2d 171 (Ala. 1990). In order to void an action on the ground of mental incapacity, the party challenging the action must show that the person was unable to understand or comprehend was he was doing. Thomas v. Neal, 600 So.2d 1000 (Ala. 1992). The person's mind must have been so impaired that he was incapable of acting either intelligently or voluntarily. Id.
The facts are as follows: Bloise Oden became ill with lung cancer. Jackson, a friend of Bloise Oden's, took care of him by cooking, cleaning, and occasionally staying with him at his home. Bloise Oden's granddaughter, Morris, visited him at least *Page 899 
weekly. Jimmy Oden moved to Alabama in the summer of 1996 and began seeing his grandfather daily.
In the late summer of 1996, Bloise Oden became concerned about unauthorized withdrawals from his bank accounts and about credit cards being issued in his name without his authorization. Morris's sister, Aletha Pope, and Morris's daughter were caught withdrawing sums from Bloise Oden's bank accounts without his authorization. Pope used her employment at Bloise Oden's bank to access his account; her employment was later terminated after it was discovered she and Morris's daughter had removed approximately $7,000 from Bloise Oden's bank account. At trial, Jackson presented evidence indicating that Morris, along with Pope and her daughter, had withdrawn $1,300 from Bloise Oden's bank account in March 1995. Morris first admitted the signature was hers but then denied that she had withdrawn those funds.
On September 30, 1996, Bloise Oden placed Jackson's name on his bank account at City National Bank. At approximately the same time, Bloise Oden placed Jimmy Oden's name on his account at SouthTrust Bank. Both accounts were joint accounts. Jackson testified that Bloise Oden had placed her name on his account because he was upset that some of his relatives had stolen from him. On October 2, 1996, Bloise Oden provided his lawyer with a limited power of attorney to investigate the incidents regarding the thefts from his bank accounts and to investigate any credit applications made in his name.
In mid-October 1996, Bloise Oden was hospitalized at Brookwood Hospital in Birmingham. Jackson testified that she stayed with Bloise Oden every day while he was in Brookwood. She testified that Bloise Oden was coherent when he was first hospitalized, but that as his health deteriorated his mental faculties became impaired. At the end of October, Morris decided to transfer Bloise Oden to Sylacauga Hospital.
Bloise Oden was transferred to Sylacauga Hospital on November 4, 1996. His doctor, Dr. William C. Friday, testified that on November 4, 1996, Bloise Oden was able to carry on a limited conversation with him. Dr. Friday testified that he placed Bloise Oden on a combination of morphine and Lorset Plus in order to control his pain. Dr. Friday testified that the pain medications rendered Bloise Oden incompetent and that he remained incompetent throughout the time that he remained in Sylacauga Hospital. Bloise Oden was discharged from Sylacauga Hospital on November 22, 1996; he died at home three days later.
On November 6, 1996, while Bloise Oden was still in Sylacauga Hospital, he signed a document giving Morris a power of attorney over his financial matters. On November 7, 1996, Morris withdrew $7,000 from Bloise Oden's bank account at City National Bank, leaving a balance in that account of $3.57. On that same day, Morris also closed Bloise Oden's account at SouthTrust Bank and received a check for approximately $2,700, which represented the balance in that account. Morris testified that she gave the $2,700 to her daughter and that she placed the $7,000 in her own account. Also during this time, Morris travelled to Bloise Oden's lawyer's office and instructed the lawyer to "cease and desist" pursuing her sister and her daughter for their theft from Bloise Oden's bank account.
On appeal, Morris argues that the trial court erred in determining that Bloise Oden was incompetent when he signed the power of attorney and in concluding that he had been subjected to undue influence. Morris cites only general authority and makes no argument specific to the facts of this case, in contravention of Rule 28, Ala.R.Civ.P. However, we note that there was a great deal of evidence to support the judgment of the trial court.
Morris insisted that Bloise Oden was competent in November 1996. Her niece *Page 900 
also testified that he was competent and that he appropriately answered the questions asked by the lawyer who drafted the power of attorney. The lawyer's law clerk, who witnessed the power of attorney, testified that Bloise Oden answered the lawyer's questions appropriately. However, he testified that Bloise Oden merely nodded his head in response to questions and that, although he moved his lips, he never answered verbally. The law clerk also testified that Bloise Oden responded only by nodding his head in the affirmative and that he never answered in the negative.
Jackson testified that shortly before he was transferred from Birmingham, Bloise Oden became incoherent. She testified that when she visited Bloise Oden on November 5, 1996, he did not know what was occurring around him. Jimmy Oden testified that Bloise Oden mistook him for Jimmy's father, and Jimmy said that he did not think Bloise Oden was competent after late October 1996.
Dr. Friday testified that he did not believe Oden was competent after being placed on the heavy pain medications on November 4, 1996. Dr. Friday testified that Bloise Oden was not able to converse with him regarding his condition. Dr. Friday testified that Bloise Oden was incoherent when he attempted to answer the doctor's questions.
The record also supports the trial court's conclusion that Bloise Oden was subjected to undue influence. Morris testified that she asked Bloise Oden if he wanted a power of attorney to prevent Jackson from taking all of his property. Morris asked her own lawyer, rather than Bloise Oden's lawyer, to draft that document. Morris admitted that she was alone with Bloise Oden for four hours before her lawyer arrived to execute the power of attorney. Within a few days of the execution of the power of attorney, the same lawyer prepared a deed and Morris "purchased" Bloise Oden's house for $1. At trial, Morris admitted that, in contravention of the trial court's temporary order to "freeze" Bloise Oden's assets, she had given away most of his furniture and was personally driving his automobile. Morris claims that only $100 of the funds she removed from Bloise Oden's accounts remains. She testified that she spent almost $7,000 on his personal expenses for the 20 days he was hospitalized in Sylacauga and the 3 days he was at home before his death.
We conclude that the record contains evidence supporting the trial court's judgment and that that judgment is not against the great weight of the evidence. We affirm as to this issue.
Morris next argues that the trial court's determination that the power of attorney was invalid was arbitrary, given that it did not declare invalid two checks to Jackson that were dated at approximately the same time as the power of attorney. At trial, Morris presented evidence that Jackson cashed two checks from Bloise Oden's bank account on November 5 and November 7, 1996. Jackson testified that Bloise Oden had signed and had given her one check before he was hospitalized in Birmingham and another check shortly after he was hospitalized. Jackson testified that those checks were meant to pay her for groceries she had purchased for Oden and to pay her for taking care of him. Jackson testified that Bloise Oden signed the checks and that she did not fill them out and cash them until early November 1996, when she returned to Sylacauga after taking care of Bloise Oden in Birmingham. In her argument on appeal, Morris takes as fact that Bloise Oden gave the checks to Jackson in early November 1996. However, no evidence in the record supports such a conclusion.
The record contains evidence supporting the trial court's judgment.
AFFIRMED.
Robertson, P.J., and Yates, Monroe, and Crawley, JJ., concur. *Page 901