The Employees' Retirement System Board of Control and the Employees' Retirement System of Alabama (together referred to as "ERS") appealed to the Court of Civil Appeals from a judgment entered by the trial court in favor of Adavier Debbie Williford, the widow of a retired state employee. The Court of Civil Appeals, on April 17, 1998, affirmed, without an opinion.Employees' Retirement System Board of Control v. Williford, (No. 2970169), 740 So.2d 492 (Ala.Civ.App. 1998) (table). We granted ERS's petition for certiorari review. We reverse and remand.
 I. Facts and Procedural History
Adavier Debbie Williford, the widow of James W. Williford, filed this action against ERS after it had denied her request to posthumously change his retirement-benefits election. Mr. Williford had worked for the State of Alabama for approximately 16 years before he retired on January 1, 1993. While working for the State, he made contributions to ERS and participated in a deferred-compensation plan and a life-insurance plan administered by the Public Employees Benefit Service Corporation ("PEBSCO"), one of the administrators of the State of Alabama Deferred Compensation Plan.
Upon his retirement, Mr. Williford was entitled to choose an ERS retirement-benefits package. ERS supplied Mr. Williford with a retirement-benefits-election form, listing four choices: a maximum retirement allowance and options 1, 2, and 3. Under the maximum retirement allowance, the ERS member receives monthly payments that are higher than the payments available under any of the three options, but the payments cease at the member's death. Under option 1, the member's designated beneficiary receives a lump-sum *Page 333 
payment if the member dies before he has received all the money from his retirement account. Under option 2, the designated beneficiary receives the same monthly payment the member received before his death. Under option 3, the member receives a larger monthly payment during his life, and his designated beneficiary receives one-half that monthly payment after the member's death. See § 36-27-16(d), Ala. Code 1975. In September 1995, ERS supplied Mr. Williford with a list of "retirement-allowance estimates." That document stated the benefits available to him under each option.1
On December 9, 1992, Mr. Williford completed his retirement-benefits-election form; he elected the maximum retirement allowance. This allowance paid him $851.37 per month during his lifetime and provided his designated beneficiary only a pro rata portion of the benefits due to him for the month in which he died, without any benefits to his designated beneficiary. Mr. Williford signed the election form and had it notarized. On December 14, 1992, ERS sent him a letter confirming his election of the maximum retirement allowance.2
Mr. Williford died on October 1, 1995. In December 1995, when Mrs. Williford discovered that he had selected the maximum retirement allowance instead of option 1, she asked ERS to change his election to option 1 because, she said, he had meant to check option 1. ERS denied her request. She then petitioned for judicial review of the final decision of ERS.
Mrs. Williford alleged that her husband had been suffering from the effects of hepatic encephalopathy when he elected his retirement benefits and that this disease had affected his reasoning ability. One of Mr. Williford's physicians, Dr. Wayne Anderson, testified that hepatic encephalopathy can cause loss of memory and confusion. Another physician, Dr. James McLaughlin, testified that he first saw evidence of mental impairment in Mr. Williford in late 1993. Dr. McLaughlin also stated that there was a high probability that in late 1992 Mr. Williford was suffering from a brain dysfunction as a result of hepatic encephalopathy. Several of Mr. Williford's coemployees testified that they had noticed a decline in his mental condition before he retired; however, he earned the highest possible rating on his job-performance review in 1992.
Mrs. Williford testified that her husband had told her on several occasions that he intended to elect option 1, and she claimed that he chose the maximum retirement allowance by mistake. However, ERS's director of benefits testified that, as far as he knew, neither Mr. Williford nor Mrs. Williford contacted ERS during Mr. Williford's lifetime to contest the amount of retirement benefits he was receiving. Kathleen Hendricks, the PEBSCO representative who assisted Mr. Williford with his retirement planning, testified that he told her several times that he intended to elect option 1. Hendricks testified that she discussed the various retirement options with him and that they decided he should elect option 1. Hendricks testified that she did not have any concerns about Mr. Williford's mental ability when he completed his retirement forms. However, neither Mrs. Williford nor Hendricks assisted Mr. Williford when he completed his retirement benefit forms.
The trial court entered a judgment for Mrs. Williford, finding that Mr. Williford had elected the maximum retirement allowance by mistake. The court concluded that when Mr. Williford made his election he was suffering from the effects of hepatic encephalopathy and that he had lost some of his intellectual and reasoning capacity as a result of his illness. The trial court awarded Mrs. Williford $16,993.59, the amount of the balance in Mr. Williford's retirement account at the time of his *Page 334 
death, plus interest from that date. ERS filed a motion to alter, amend, or vacate the judgment. The trial court granted that motion to the extent of reducing the amount of the judgment by $1,484.67 plus interest.
 II. Discussion
ERS contends that the Court of Civil Appeals' affirmance of the trial court's judgment for Mrs. Williford conflicts with this Court's decision in Employee's Retirement System of Alabama v.McKinnon, 349 So.2d 569 (Ala. 1977). In that case, McKinnon, like Mr. Williford, elected the maximum retirement allowance when completing his retirement-benefits-election forms. After his death, McKinnon's widow and son filed an action against the Teachers' Retirement Systems ("TRS"),3 alleging that McKinnon had mistakenly elected the maximum retirement allowance and that they were entitled to a retirement benefit under option 3. In the alternative, they argued that McKinnon had mistakenly believed that the maximum retirement allowance would be paid to his son, his designated beneficiary, upon his death. McKinnon is distinguishable from this case because McKinnon changed his retirement-benefits election on one of the two forms he completed, copies of which are published with this Court's opinion as appendices. On his application for service retirement, McKinnon initially marked the box beside the election that stated: "I desire the maximum allowance payable during life, with all benefits to cease at my death." That mark is crossed out, and an "X" is marked in the box beside the election that stated: "Please send me figures indicating the approximate amount of my allowance under the provision of Option 1." 349 So.2d at 573-74. However, on the form entitled "Member's Election of Retirement Benefits," McKinnon placed an "X" in the box beside "Maximum Retirement Allowance." Id. at 575. In McKinnon, the trial court reversed TRS's decision that McKinnon's election of the maximum retirement allowance was binding, and it ordered TRS to pay McKinnon's beneficiaries a lump-sum benefit equal to his contributions and interest in the fund. This Court reversed and remanded. In reversing, this Court specifically noted that it was not determining whether McKinnon had been mistaken when he marked the box asking for the maximum retirement allowance. This Court held that McKinnon's widow and son were not precluded from showing that McKinnon had intended to elect an option other than the maximum retirement allowance, and that ERS was not precluded from showing that he had intended to elect the maximum retirement allowance.
McKinnon states that the Board of Control "should try to ascertain the intent of its members when they apply and [to] carry out that intent, if allowed by law, so that the members will receive all benefits provided by law." 349 So.2d at 574
(emphasis in original). We agree that ERS should carry out its members' intent. Once a recipient has made a benefit election, however, if that election is clear on its face then ERS should be able to rely on that election.
In this case, Mr. Williford's intent is clear from the face of his "Member's Election of Retirement Benefits" form.4 He clearly marked only the box labeled "Maximum Retirement Allowance." When ERS receives a clear and unambiguous election-of-benefits form, we will not require ERS to look beyond the face of the form. This Court has applied this principle in cases involving other documents. This Court has stated that in interpreting a will "[e]xtrinsic evidence is not admissible to vary, contradict or add to the plain and unambiguous language of the will." *Page 335 Cook v. Morton, 254 Ala. 112, 116, 47 So.2d 471, 474
(1950). This Court often has stated that it will not look beyond the four corners of an instrument unless the instrument contains latent ambiguities. Martin v. First Nat'l Bank of Mobile,412 So.2d 250, 253 (Ala. 1982). Mr. Williford's benefits-election form was unambiguous, and ERS carried out what appears to have been his clearly stated intent.
Another fact distinguishing McKinnon from this case is that TRS sent McKinnon the form that contained retirement-allowance estimates and the form for him to indicate which retirement-benefits package he elected. After the effective date of McKinnon's retirement, the secretary-treasurer of TRS sent him a letter containing tax information and other information regarding his retirement benefits. Id. We can find no indication that anyone from TRS personally explained to McKinnon the retirement-benefits choices. In this case, however, employees of ERS met with Mr. Williford and explained the retirement choices available to him. Hendricks testified that she met with Mr. Williford several times before he retired and discussed with him the retirement choices available. Hendricks testified that she also met with Mr. and Mrs. Williford two or three times a year between 1990 and his retirement on January 1, 1993. Mr. Williford had numerous opportunities to ask questions of Hendricks. Hendricks said she and Mr. Williford discussed at length the differences between the maximum retirement allowance and option 1. Therefore, we hold that ERS was entitled to rely on the form indicating that Mr. Williford had elected the maximum retirement allowance.5
 Conclusion
We realize that this decision does not help Mrs. Williford. Nevertheless, we cannot sustain a posthumous challenge to a clear, unambiguous election of retirement benefits. To permit a surprised, disappointed, or disgruntled beneficiary to change an ERS member's retirement-benefits election that is clear on its face, after events have made the election undesirable, would wreak havoc on the retirement system.
We reverse the judgment of the Court of Civil Appeals, and we remand the cause for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
1 See Appendix A.
2 See Appendix B.
3 The Retirement System of Alabama includes both the Employees' Retirement System and the Teachers' Retirement System. See § 36-27-3, Ala. Code 1975.
4 See Appendix C.
5 In light of this decision, we need not discuss any of ERS's other arguments. *Page 336 
APPENDIX A
RETIREMENT ALLOWANCE ESTIMATES
THE RETIREMENT PLANS REQUESTED ESTIMATE DATE 09-23-92
If you have submitted your Application for Retirement, one of these plans is to be selected by you on the separate enclosed sheet under the section Member's Election of Retirement Benefits. If you have requested an estimate of benefits, the figures below represent the approximate benefits you are eligible to receive if you retire in the Retirement Date shown.
MAXIMUM RETIREMENT ALLOWANCE
$ 846.90 per month for the remainder of your life, all benefits -------- ceasing at your death.
OPTION I
$ 801.95 per month for the remainder of your life --------
$ 23,996.84 is the total amount of your annuity savings at the time of ------------ your retirement.
$ 212.74 is the rate per month that you will use up your annuity savings. -------- If you should die before you have received all of your annuity savings, any unpaid balance will be paid to your designated beneficiary in a lump sum.
113 is the number of months you must survive in order to use up the --------- total amount of your annuity savings based on the amount of your benefit at the current time.
 NOTE: The retirement allowance payable to the designated beneficiary under Options II and III is fixed at the time of retirement and is not automatically increased to subsequent legislative increases in your benefit. The beneficiary designated to receive a survivor benefit may not be changed after the effective date of retirement if your beneficiary should pre-decease you, a new beneficiary may be designated to receive a pro-rata payment for the number of days you survive during the month of your death. Please report the death of your beneficiary to the Retirement Systems of Alabama
OPTION II
$ 512.69 per month for the remainder of your life and upon your death --------- $ 512.69 per month will be sent to your beneficiary for the remainder --------- of your beneficiary's life if your beneficiary survives you.
OPTION III
$ 635.61 per month for the remainder of your life and upon your death --------- $ 317.81 per month will be paid to your beneficiary for the remainder --------- of your beneficiary's life. If your beneficiary survives you.
DATE 09/21/92
DATA USED IN THE CALCULATION OF YOUR BENEFIT
BENEFICIARY
 NAME ADAVIER D WILLIFORD PRIOR SERVICE 00 00 (YRS MOS) SEX FEMALE BIRTHDATE 06/16/32 MEMBER SERVICE 16 03 (YRS MOS)
RETIREMENT TYPE SERVICE TOTAL SERVICE 16 03 (YRS MOS)
BIRTH DATE 10/01/21 ACCOUNT BALANCE $23,996.84
RETIREMENT DATE 01/01/93 AVERAGE FINAL SALARY $31,076.00
SOCIAL SECURITY NO. 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
 JAMES W WILLIFORD ERS 164619 6156 BELL RD MANOR MONTGOMERY, AL 36117/4361 *Page 337 
 APPENDIX B EMPLOYEES RETIREMENT SYSTEM OF ALABAMA 12/14/92
JAMES W WILLIFORD
6156 BELL RD MANOR MONTGOMERY AL 36117/4361
 REG NO 164619 SSAN 422181992
DEAR JAMES W WILLIFORD
THIS WILL ACKNOWLEDGE RECEIPT OF YOUR MEMBER ELECTION OF RETIREMENT BENEFITS FORM WHICH INDICATES THAT YOU HAVE ELECTED THE MAXIMUM BENEFIT.
YOUR FIRST CHECK WILL BE ISSUED 01/31/93
YOUR MONTHLY BENEFIT WILL BE IN THE AMOUNT OF BASED UPON FEDERAL REGULATIONS, 95.3% OF YOUR MONTHLY BENEFIT IS SUBJECT TO FEDERAL INCOME TAX BEGINNING WITH YOUR FIRST CHECK. PLEASE BE REMINDED THAT YOUR ACCOUNT IS SUBJECT TO AUDIT AFTER RETIREMENT.
YOU HAVE AUTHORIZED THE FOLLOWING DEDUCTIONS TO BE MADE FROM THE ABOVE AMOUNT:
 STATE EMPLOYEES HEALTH INSURANCE INDIVIDUAL PREMIUM $102.00 DEPENDENT PREMIUM $.00 LESS STATE ALLOCATION FOR RETIREE $102.00 PAYROLL DEDUCTION FOR HEALTH INS $.00 FEDERAL INCOME TAX WITHHOLDING $91.10 (STATUS: SINGLE EXEMPTIONS: 00)
 AUTHORIZED DEDUCTIONS PENDING RECEIPT OF BILLING FROM THE COMPANY: LIFE INS CO OF ALABAMA
VERY TRULY YOURS,
RETIREMENT COUNSELOR *Page 338 
APPENDIX C
EMPLOYEES' RETIREMENT SYSTEM OF ALABAMA APPENDIX C 135 South Union Street Montgomery, AL 36130-0001 INSTRUCTIONS
The calculations shown on the enclosed form are based on service and salary information contained in your file at the Retirement System as supplied by your employing agency. Please notify the Retirement System if any figures differ with your personal records and explain the differences.
The properly completed Member's Election of Retirement Benefits form must be received by the Retirement System no later than the effective date of your retirement.
If the Retirement System has not received your election of benefits by the effective date of your retirement, you will receive your benefit under the provisions of the maximum allowance.
Should you desire to cancel your application for retirement, notice must be given to the Retirement System prior to your effective date of retirement. Failure to give timely notice will result in an irrevocable application.
When you decide which plan you prefer, please complete the form below, and acknowledge your signature before a Notary Public. Detach and return it to this office.
Upon receipt of your properly completed Member's Election of Retirement Benefits form, this office will forward to you additional information relative to your benefit and data which should be helpful in completing your income tax return.
If you elect to receive your benefit under the provisions of either the maximum allowance or Option 1, you may change your beneficiary at a later date by properly executing a change of beneficiary form and submitting it to this office.
If you elect to receive your benefit under the provisions of either Option 2, or Option 3, you may not change your beneficiary after the effective date of your retirement.
Your first check will be mailed to you on the last day of the month in which your retirement is effective. If you wish to have your check mailed to your bank for deposit, please contact this office for a Direct Request form.
Please retain this portion of the form for your records.
DETACH HERE -------------------------------------------------------------------------- MEMBER'S ELECTION OF RETIREMENT BENEFITS
TO THE EMPLOYEES' RETIREMENT SYSTEM
I, James W. Williford, have been advised by you of the estimated maximum retirement allowance to which I am entitled, as well as of certain optional modifications thereof. I request that my retirement allowance be paid to me as follows: (Choose one and mark the appropriate box.)
[x] Maximum Retirement Allowance Option 1 Option 2 Option 3
Member's Signature: James W. Williford 
Address: 6156 Bell Rd Manor Montgomery Alabama 36117 
Street City State Zip Code State of Alabama, County of Montgomery, on this 9th day of Dec., 1992
appeared before me, the above named James W. Williford to me know to be the person who executed the foregoing instrument and acknowledge the same to be his/her own free act and deed.
 Pamela B. Gates
Signature of Notary Public *Page 339