The appellants, Bettye Jan Belcher Queen, Beverly Jean Belcher Scroggins, and Otha A. Belcher ("the petitioning children"), and the appellee, Brent Belcher ("Brent"), are all children of Olon Belcher, an 87-year-old man who, they all acknowledge, suffers from dementia. During his lifetime, Olon acquired a substantial estate, largely through the success of Olon Belcher Lumber Company, a retailer of lumber and building supplies. For some time, Brent has actively managed his father's estate, first through a durable power of attorney executed in 1995, and later through a family partnership formed in 1995, and amended in 1999, and a trust agreement executed in 1998. *Page 474 
On June 15, 2000, the petitioning children petitioned the Probate Court of Bibb County to have a conservator appointed for their father because of his diminishing mental capacity and because of concern about the way their brother Brent was handling his estate. On February 9, 2001, the probate judge granted the petition, concluding that Olon "is a person unable to manage property and business affairs effectively as described in [§26-2A-130, Ala. Code 1975]." The order also required Brent to produce the 1998 trust agreement and to make an accounting of that trust. Sanford E. Gunter was appointed conservator of Olon's estate.
Brent immediately removed the conservatorship to the Bibb Circuit Court and, in June 2001, moved the court to issue an order: (1) adopting the "Plan for Joint Care of Olon Belcher" Brent had submitted, (2) directing the conservator to work with the instruments of Olon's estate already in effect (the durable power of attorney, the partnership agreement, and the trust agreement), and (3) setting June 15, 2000, the date the petitioning children filed their petition for a conservator, as the effective date for the appointment of a conservator. The petitioning children opposed Brent's motion and moved the court to compel Brent to comply with the provisions of the probate court's February 9 order that required him to produce the 1998 trust agreement and to make an accounting of that trust. They further asked the court to find that Olon had been incapable of managing his business affairs since 1994, and that, therefore, he did not have the capacity in 1995 to execute the power of attorney or the partnership agreement or subsequently in 1998 to execute the trust agreement and that those documents were therefore invalid. On July 26, 2001, the trial court ruled that Brent did not have to comply with the provisions of the probate court's order requiring him to produce the trust agreement and to make an accounting of the trust, but it did not address the other pending issues.
Meanwhile, on October 16, 2001, the court-appointed conservator filed his inventory of Olon's estate. After listing Olon's then current assets and liabilities, he noted numerous transactions in which Brent had been involved that the conservator had not investigated, and he asked the court to clarify the scope of his responsibility, stating:
 "Numerous transactions have occurred over the past years, including liabilities such as that of Belcher Oil Co., Inc. The Conservator has not investigated any transfer as to the issues of fair market value paid or received; proration of interest versus value of contribution; amount and necessity of payouts or withdrawals; potential for conflict of interest issues wherein Brent Belcher serves as Power of Attorney, trustee, Manager, President or Director of Corporation all wherein the ward, Olon Belcher, has an interest therein.
 "The Conservator would determine that under § 26-2A-152, et seq., he has no authority to visit these issues without the Court, per § 26-2A-154, enlarging the Conservator's power."
The trial court scheduled a hearing for December 17, 2001, to determine when Olon became incapable of effectively managing his property and his business affairs. At the hearing, the petitioning children presented deposition testimony from three doctors in support of their contention that Olon was incapable of effectively managing his property and business affairs at least as early as 1995, when he executed the power of attorney in favor of Brent. They asked the court to invalidate the power of attorney, the partnership agreement, and the trust agreement, and to order a full *Page 475 
accounting of the estate from 1995 to the present.
In response, Brent presented six affidavits from witnesses who knew Olon in varying degrees, both personally and in business settings, and who swore that Olon had appeared lucid and intelligent during business interactions they had had with him at different times between 1993 and 2000. Brent also presented evidence indicating that the petitioning children had benefited as well from transactions with Olon during this period. The petitioning children moved to strike the affidavits as hearsay.
On May 13, 2002, the court denied the petitioning children's motion to strike the affidavits and found that Olon had the legal capacity to execute the power of attorney and the partnership agreement in 1995 and the trust agreement in 1998. The court denied the petitioning children's request for an accounting of the estate and ordered that the conservator manage the estate to reflect the validity of all the documents executed by Olon before the conservator was appointed.
On June 12, 2002, the petitioning children filed a motion to alter, amend, or vacate the circuit court's order. Because the court did not rule on the motion within 90 days, it was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. On September 20, 2002, the petitioning children filed their notice of appeal to this Court. On December 30, 2002, Brent moved this Court to dismiss the appeal for want of jurisdiction.
If the May 13 order is not an order from which an appeal may be taken, then Brent's motion to dismiss should be granted. Brent argues that the May 13 order is interlocutory because, he argues, it concerns the ongoing administration of a conservatorship, and he further argues that, because there is no statutory authority to appeal such an order, this Court lacks jurisdiction. The petitioning children respond that because the order disposed of all the issues pending in the case, it is properly viewed as a final judgment from which an appeal may be taken under § 12-22-2, Ala. Code 1975.
An appeal does not lie from an interlocutory order concerning the ongoing administration of an estate unless a statute specifically authorizes such an appeal. Sawyer v. Sawyer,246 Ala. 544, 545, 21 So.2d 667, 668 (1945). Because there is no statute applicable to this situation, the motion to dismiss must be granted if the circuit court's May 13 order is in fact interlocutory, but denied if that order is a final judgment.
The trial court titled the order "Memorandum Opinion and Final Order." In the case action summary, the case status is "Disposed." However, "it is not the title of an order that makes it final; rather, the test of a judgment's finality is whether it sufficiently ascertains and declares the rights of the parties."Ex parte DCH Reg'l Med. Ctr., 571 So.2d 1162, 1164
(Ala.Civ.App. 1990) (citing McCulloch v. Roberts, 290 Ala. 303,276 So.2d 425 (1973)). "An appeal will ordinarily lie only from a final judgment; that is, a judgment that conclusively determines the issues before the court and ascertains and declares the rights of the parties." Palughi v. Dow, 659 So.2d 112, 113
(Ala. 1995).
None of the cases cited by the parties is clear precedent. However, even Brent acknowledges that the May 13 order disposed of every issue pending before the court.[1] His argument that the judgment *Page 476 
could not have been final because the petitioning children might raise other arguments at some time during the conservatorship is unpersuasive. "A judgment that `declares the rights of the parties and settles the equities is final even though further proceedings by the court are envisioned so as to effectuate the decree.'" Self v. Roper, 689 So.2d 139, 140 (Ala.Civ.App. 1996) (quoting Wilson v. Wilson, 53 Ala.App. 201, 298 So.2d 622 (Civ. 1973)). Because the order "leaves nothing for further adjudication," it must properly be viewed as a final judgment that supports an appeal. Ex parte Wharfhouse Restaurant OysterBar, Inc., 796 So.2d 316, 320 (Ala. 2001). The motion to dismiss the appeal is denied.
The petitioning children challenge the findings in the May 13 order on three grounds. First, they argue that the court erred by basing its conclusions on Olon's capacity to make a will instead of the higher standard of his capacity to enter into contracts and to convey property. Second, they argue that the court erred by apparently ignoring the opinions of the three physicians who testified by deposition even though there was no admissible evidence that contradicted their testimony. Finally, they argue that the court erred in basing its opinion on hearsay affidavits.
Brent argues that this Court should apply the same standard of review it uses to review judgments based on ore tenus evidence, and that the trial court's decision should not be disturbed unless it is plainly and palpably wrong. "[T]he trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony." Ex parte Pielach, 681 So.2d 154, 155 (Ala. 1996). However, in this case, although the trial judge heard testimony from Olon's children, his ruling is based almost entirely on the written depositions of Olon's physicians and the affidavits submitted by Brent, not on oral testimony. "When a trial judge's ruling is not based substantially on testimony presented live to the trial judge, review of factual issues is de novo."Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala. 1999). "`Consequently, no presumption of correctness will be accorded the trial court's findings on the evidence, and this court will sit in judgment on the evidence as if it had been presented de novo.'" Eubanks v. Hale, 752 So.2d 1113, 1122
(Ala. 1999) (quoting Hospital Corp. of America v. SpringhillHosps., Inc., 472 So.2d 1059, 1061 (Ala.Civ.App. 1985)).
The petitioning children argue that the trial court erred in determining whether Olon had the mental capacity to execute the power of attorney and to enter into the agreements based on the standard necessary to execute a will, instead of the higher standard of the capacity to enter into contracts and to convey property. The trial court quoted from the California case Estateof Arnold v. Logan, 16 Cal.2d 573, 585-86, 107 P.2d 25 (1940):
 "It is well settled that mere proof of mental derangement or even of insanity in a medical sense is not sufficient to invalidate a will, but the contestant is required to go further and prove either such a complete mental degeneration as denotes utter incapacity to know and understand those things which the law prescribes as essential to the making of a will, or the existence of a specific insane delusion which affected the making of the will in question."
The trial court's May 13 order further stated that a "person's inability to transact *Page 477 
general business affairs or account for his financial interest does not support a lack of legal capacity to execute a will or other documents." Thus, the trial court was correct in recognizing that there are two standards of legal capacity — one for "general business affairs" and one for "a will or other documents"; however, the trial court erred when it held the power of attorney, the partnership agreement, and the trust agreement to the standard applicable to wills. Those are not testamentary documents.
In Abbott v. Rogers, 680 So.2d 315, 317 (Ala.Civ.App. 1996), the Court of Civil Appeals held that a person challenging a conveyance on the ground of mental incapacity need show only "that the grantor was unable to understand and comprehend what he or she was doing" (citing Thomas v. Neal, 600 So.2d 1000 (Ala. 1992)). A trust agreement is an inter vivos conveyance of property, and is, therefore, subject to the standard governing conveyances. See I A.W. Scott W.F. Fratcher, Scott onTrusts §§ 18 19, at 243-44 (4th ed. 1987) (stating that an owner of property is capable of placing that property in trust if he is otherwise capable of conveying it, but if his conveyance would be voidable because of insanity or the like, his declaration of trust would likewise be voidable). This same higher standard has also been applied to powers of attorney. SeeMorris v. Jackson, 733 So.2d 897 (Ala.Civ.App. 1999).
Thus, the trial court erred when it applied the standard for testamentary capacity to determine the validity of the power of attorney, the partnership agreement, and the trust agreement. The correct standard is whether Olon "was unable to understand and comprehend what he was doing" at the time he signed the power of attorney and the partnership and trust agreements. Thomas, 600 So.2d at 1001. The burden is initially on the petitioning children to show that Olon was not competent at the time he executed the documents; however, if they show that he was habitually or permanently incompetent before the transactions were attempted, the burden then shifts to Brent to show that the documents were made during a lucid interval. Abbott, 680 So.2d at 317.
The petitioning children argue that the affidavits submitted by Brent purporting to show that Olon had the mental capacity necessary to execute the power of attorney, the partnership agreement, and the trust agreement are inadmissible hearsay. "As a general rule, an affidavit is hearsay and, therefore, not admissible for the purpose of proving the truth of the matter stated in it." Charles Gamble, McElroy's Alabama Evidence § 260.01 (5th ed. 1996). This Court has stated that "[a]n affidavit is inadmissible hearsay and cannot be offered as substantive evidence." Associates Fin. Servs. Co. of Alabama, Inc. v.Barbour, 592 So.2d 191, 196 (Ala. 1991).
The trial court dismissed the petitioning children's objection to the affidavits on hearsay grounds, stating that it "is within the Court's discretion to consider all evidence submitted by the parties which the Court deems relevant or otherwise bearing on the central issues before the Court." Although it is true that a trial court has broad discretion concerning the admission of evidence, there are limits to that discretion. See Rule 802, Ala. R. Evid. ("Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute."); Rule 43(a), Ala. R. Civ. P. ("In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided in these rules."). Neither Brent nor the trial court has identified any exception to the exclusionary *Page 478 
hearsay rule that would permit the affidavits to be admitted into evidence; accordingly, they cannot be considered.
We reverse the order of the trial court and remand this case for reconsideration consistent with this opinion to determine whether Olon Belcher was competent to execute the power of attorney and to enter into the partnership agreement and the trust agreement.
MOTION TO DISMISS APPEAL DENIED; REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The petitioning children argue that it also disposed of some issues that were not pending.