YATES, Presiding Judge,
dissenting.
Section 36-27-16, Ala.Code 1975, provides, in pertinent part:
“(a)(1) Retirement, Etc., Of Employees Generally; Eligibility For Service Retirement Benefits.
“a. Any member who withdraws from service upon or after attainment of age 60 may retire upon written application to the Board of Control setting forth at what time, not less than 30 days nor more than 90 days subsequent to the execution and filing thereof, he desires to be retired; provided, that any such member who became a member on or after October 1, 1963, shall have completed 10 or more years of creditable service; provided further, that a member employed as a state policeman shall be eligible to file application of service retirement upon attaining age 52.
“b. Any member who has attained age 60, or age 52 in the case of a state policeman, and has previously withdrawn from service may retire upon written application to the Board of Control setting forth at what time, not less than 30 days nor more than 90 days subsequent to the execution and filing thereof, he desires to be retired; provided, said member shall have at the time of his withdrawal from service completed the age and service requirements established by the Board of Control for eligibility for deferred benefits; provided, that such minimum number of years of creditable service shall not be less than 10 years nor more than 25 years.
“c. In addition to any law or part of law relating to service retirement under the Employees’ Retirement System of Alabama, any member of the Employees’ Retirement System who withdraws from service after completion of not less than 25 years of creditable service may retire without a reduction in retirement allowance upon written application to the Board of Control of the Employees’ Retirement System setting forth the first day of which month, not less than 30 days or more than 90 days subsequent to the execution and filing thereof, he desires to be retired, provided that no person whose employer participates in the Employees’ Retirement System under Section 36-27-6 shall be entitled to the benefits provided in this paragraph unless such employer elects to come under the provisions of said paragraph. Any employer making such election must bear the cost of such benefit.
[[Image here]]
“(d) Optional allowances. With the provision that the election of an option shall be effective on the effective date of retirement, any member may elect prior to retirement to receive, in lieu of his retirement allowance payable throughout life, the actuarial equivalent, at that time, of his retirement allowance in a reduced retirement allowance payable throughout life with the provisions that:
“(1) Option 1. If he dies before he has received in annuity payments the present value of his annuity as it was at the time of his retirement, the balance shall be paid to his legal representatives or to such person as he shall nominate by written designation duly acknowledged and filed with the Board of Control;
“(2) Option 2. Upon his death, his reduced retirement allowance shall be continued throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the Board *1049 of Control at the time of his retirement;
“(3) Option 3. Upon his death, one half of his reduced allowance shall be continued throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the Board of Control at the time of his retirement; or
“(4) Option 4. Some other benefit or benefits shall be paid either to the member or to such person or persons as he shall nominate; provided, that such other benefits, together with the reduced retirement allowance, shall be certified by the actuary to be of equivalent actuarial value to his retirement allowance and shall be approved by the Board of Control.”
I disagree with ERS’s argument that § 36-27-16(a) and (d) requires that Stot-hart receive the maximum retirement allowance in the event her election was void. Section 36-27-16 provides for payment of the maximum retirement allowance when a retiree fails to make an election. Here, Stothart did not fail to make an election; rather, she executed an election form while she was mentally incapacitated. Stothart timely submitted an election-of-benefits form before her retirement, as required by the statute; however, she was without the mental capacity to understand the nature of the form. Section 36-27-16(d) provides that a retiree may make an election to select an actuarial equivalent of his retirement allowance “in lieu of his retirement allowance payable throughout life.” There is nothing in § 36-27-16 that addresses the factual situation where a retiree makes a timely election but that election is void because of mental incapacity. Further, ERS’s benefit-selection form seems to contradict its position, because there would be no reason for an employee to affirmatively select “maximum retirement allowance” on the form before retirement. Also, I note that in Employee’s Retirement System of Alabama v. McKinnon, 349 So.2d 569 (Ala.1977), the employee filled out two forms concerning retirement benefits, selecting a different benefit payment on each form. The supreme court stated that the parties could on remand further develop the factual issue whether the retiree was mistaken in marking conflicting choices on his retirement forms.
“If the trial court determines on remand that [the retiree] intended to select one of the [actuarial-equivalent] options, then in that event, it is the law that he made the selection with the condition attached that if he died before the end of the month following the effective date of retirement, which he did, an allowance would be paid to the surviving spouse.... ”
349 So.2d at 573. Nothing in McKinnon indicates that § 36 — 27—16(d) is automatically triggered if the election form is conflicting, void, or invalid. Accordingly, I must respectfully dissent.
I also write to note that I disagree with ERS’s argument that Ex parte Employees’ Retirement System Board of Control, 767 So.2d 331 (Ala.2000), addresses the same factual situation as the present case. In Ex parte Employees’ Retirement System Board of Control, the State employee executed a selection-of-benefits form in December 1992, selecting the maximum retirement benefit before he retired on January 1, 1993. In October 1995, the employee died, and his widow asked ERS to change the election; the ERS Board of Control denied the widow’s request. The employee’s widow sought review, alleging that the employee suffered from hepatic encephalopathy when he elected his retirement benefits. One doctor testified that hepatic encephalopathy can cause loss of *1050 memory and confusion. Another doctor testified that he saw mental impairment in the employee in late 1993 and that there was a high probability that in late 1992 the employee suffered from a brain dysfunction. The Public Employees Benefit Service Corporation (“PEBSCO”) representative who had discussed the various options with the employee testified that the employee had decided that an actuarially equivalent option was in the employee’s best interest, and the representative stated that she did not have any concerns about the employee’s mental ability. ERS presented evidence that the employee had had his highest job-performance review in 1992 and that there had been no challenge to the employee’s election before his death.
The trial court in Ex parte Employees’ Retirement System Board of Control, supra, entered a judgment in favor of the widow, finding that the employee had elected the maximum retirement allowance by mistake. The trial court concluded that when the employee “made his election he was suffering from the effects of hepatic encephalopathy and that he had lost some of his intellectual and reasoning capacity as a result of his illness.” 767 So.2d at 333. This court affirmed the trial court’s judgment without an opinion.
ERS sought certiorari review, arguing that this court’s affirmance conflicted with McKinnon, 349 So.2d 569. In McKinnon, the employee filled out two forms concerning retirement benefits, selecting a different benefit payment on each form. The supreme court in McKinnon reversed the trial court’s judgment and noted that on remand the parties could further develop the factual issue of the employee’s intent.
The supreme court discussed McKinnon in Ex parte Employees’ Retirement System Board of Control, 767 So.2d at 334-35, and ultimately concluded:
“McKinnon states that the Board of Control ‘should try to ascertain the intent of its members when they apply and [to] carry out that intent if allowed by law, so that the members will receive all benefits provided by law.’ 349 So.2d at 574 (emphasis in original). We agree that ERS should carry out its members’ intent. Once a recipient has made a benefit election, however, if that election is clear on its face then ERS should be able to rely on that election.
“In this case, [the employee]’s intent is clear from the face of his ‘Member’s Election of Retirement Benefits’ form. He clearly marked only the box labeled ‘Maximum Retirement Allowance.’ When ERS receives a clear and unambiguous election-of-benefits form, we will not require ERS to look beyond the face of the form. This Court has applied this principle in cases involving other documents. This Court has stated that in interpreting a will ‘[e]xtrinsic evidence is not admissible to vary, contradict or add to the plain and unambiguous language of the will.’ Cook v. Morton, 254 Ala. 112, 116, 47 So.2d 471, 474 (1950). This Court has often stated that it will not look beyond the four corners of an instrument unless the instrument contains latent ambiguities. Martin v. First Nat’l Bank of Mobile, 412 So.2d 250, 253 (Ala.1982). [The employee]’s benefits-election form was unambiguous, and ERS carried out what appears to have been his clearly stated intent.”
The supreme court also noted that McKin-non was distinguishable from the facts in Ex parte Employees’ Retirement Board of Control, because in McKinnon there was no indication that anyone from the retirement system personally explained the retirement-benefit choices available to the employee.
*1051 The present ease is distinguishable from Ex parte Employees’ Retirement Board of Control, because in that case the trial court did not conclude that the employee was mentally incapacitated at the time he signed the retirement election form. Instead, it found that the employee had elected the maximum allowance by mistake and that at the time he made his election he had lost some of his reasoning and intellectual capacity. Ex parte Employees’ Retirement Board of Control is also distinguishable because in that case the employee made his election almost three years before his death and because a PEBSCO representative discussed the elections available and did not have any concerns about the employee’s mental capacity. Also, the supreme court in Ex parte Employees’ Retirement System Board of Control cites McKinnon, where the issue was not mental capacity but a mistake in marking the benefit form. The supreme court also cited Cook v. Morton, 254 Ala. 112, 47 So.2d 471 (1950), and Martin v. First National Bank of Mobile, 412 So.2d 250 (Ala.1982), neither of which concerned mental incapacity but instead involved alleged ambiguities in the decedent’s will.
For a contract to be void on the ground of mental incapacity, the person alleged to have been incompetent at the time of the contract was executed must have “ ‘had no reasonable perception or understanding of the nature and terms of the contract.’ ” Lloyd v. Jordan, 544 So.2d 957, 959 (Ala.1989)(quoting Williamson v. Matthews, 379 So.2d 1245, 1247 (Ala.1980)). In Lloyd, the daughters of the deceased, who owned an annuity, petitioned the probate court for an order designating them as beneficiaries of their father’s annuity. The daughters presented testimony from their father’s physician that at the time them father changed his beneficiary form he was incapable of understanding and appreciating the nature and effect of the change-of-beneficiary form.
In Queen v. Belcher, 888 So.2d 472 (Ala.2003), the father executed a power of attorney, as well as partnership and trust agreements. Three of the father’s four children challenged the standard the trial court used in determining that the father had the mental capacity to execute the documents. Our supreme court held that the correct standard for determining whether the father had the mental capacity to execute the power of attorney as well as the partnership and trust agreements was whether the father “ ‘was unable to understand and comprehend what he was doing’ at the time he signed the power of attorney and the partnership and trust agreements.” Queen, 888 So.2d at 477 (quoting Thomas v. Neal, 600 So.2d 1000, 1001 (Ala.1992)).
In Morris v. Jackson, 733 So.2d 897 (Ala.Civ.App.1999), an action was brought to set aside a power of attorney executed in favor of the testator’s granddaughter. The trial court set aside the power of attorney, finding that the testator was incompetent when he executed the form.
“In order to void an action on the ground of mental incapacity, the party challenging the action must show that the person was unable to understand or comprehend [what] he was doing. Thomas v. Neal, 600 So.2d 1000 (Ala.1992). The person’s mind must have been so impaired that he was incapable of acting either intelligently or voluntarily. Id.”
733 So.2d at 898. The testator’s physician in Morris testified that the testator had lung cancer and was on such heavy pain medication that he was incompetent. This court held that the record supported the trial court’s finding of incompetency.
On a motion for a summary judgment, when the nonmovant offers no evidence to *1052 contradict that presented by the movant, the movant’s evidence is treated by the trial court as uncontroverted. Griffin v. American Bank, 628 So.2d 540 (Ala.1993)(plaintiff/bank was entitled to recover from defendanVborrower where there was no evidence to contradict that presented by the plaintiff/bank). In the present case, the evidence was uncontro-verted that Stothart was mentally incapable of making intelligent and voluntary decisions. In contrast to Ex parte Employees’ Retirement System Board of Control, the circuit court in this case clearly made a finding of mental incapacity and voided Stothart’s election form on that basis alone. Because the evidence shows that Stothart was so impaired by her treatment of radiation, chemotherapy, and pain medication that she was incapable of understanding the election form, I cannot say that the trial court erred in determining that there was substantial evidence to warrant voiding Stothart’s July 23, 2003, election form.
I cannot say that it was outside the circuit court’s jurisdiction to grant the equitable relief sought by Givhan. “The trial court has the power to mold its decree ‘so as to adjust the equities of all parties and to meet the obvious necessities of each situation.’ ” Clark v. Cowart, 445 So.2d 884, 888 (Ala.1984)(quoting Coupounas v. Morad, 380 So.2d 800, 803 (Ala.1980)). “There is no doubt that any retirement system depends for its soundness on an actuarial experience based on the purely prospective selections of benefits and mortality rates among the covered group, and that retrospective or adverse selection after the fact would be destructive of a sound system.” Ortelere v. Teachers’ Retirement Bd. of the City of New York, 25 N.Y.2d 196, 198, 250 N.E.2d 460, 461, 303 N.Y.S.2d 362, 364 (1969)(allowing retiree’s husband to set aside retiree’s election because of mental illness). Although ERS needs to be able to rely on choices made by its members, “ ‘[a] court of equity guards with jealous care all contracts with persons of unsound mind.’ ” Lloyd v. Jordan, 544 So.2d at 959 (quoting 17 C.J.S. Contracts § 133(1) at 855-57 (1963)).
THOMPSON, J., concurs.