Olivia Lloyd, the widow of George Loring Lloyd, appeals from the probate court's judgment establishing Betty Lou Jordan and Marion F. Pitts as the co-beneficiaries of an annuity purchased by George Loring Lloyd, who allegedly executed a change of beneficiary form before his death naming Olivia Lloyd, not Jordan and Pitts, as the beneficiary of the annuity.
The record reflects that George Lloyd purchased the annuity from the Executive Life Insurance Company of Beverly Hills, California, in September 1983 and named his daughters by a previous marriage, Jordan and Pitts, as co-beneficiaries. George Lloyd also executed a will in June 1985 that devised all of his property to Jordan and Pitts and made no provision for Olivia Lloyd. It appears that although they had divorced after the execution of the will, George Lloyd and Olivia Lloyd remarried in August 1987. Testimony from George Lloyd's physician, however, indicated that Lloyd was showing signs of mental instability and chronic dementia related to hypoxemia in April 1987, and, in fact, he was declared non compos mentis in September 1987.
In August 1987, Olivia Lloyd obtained a change of beneficiary form from Executive Life, and George Lloyd allegedly executed the form to change the beneficiary of the annuity to Olivia Lloyd. We note that this change of beneficiary form does not appear in the record. After George Lloyd's death, Jordan and Pitts petitioned the probate court to enter an order designating them as the proper beneficiaries of the annuity on grounds that Lloyd was mentally incompetent and lacked capacity to execute the change of beneficiary form. The issue for our review is whether the probate court erred in its order that Jordan and Pitts be designated beneficiaries of the annuity. The court heard ore tenus testimony and, therefore, its judgment will not be disturbed unless it is unsupported by the evidence; this Court "will indulge all favorable presumptions to sustain that court's conclusion, and it will be disturbed on appeal only if shown to be plainly erroneous or manifestly unjust." CRW, Inc. v. Twin Lakes Property Owners Ass'n Inc., *Page 959 
521 So.2d 939, 941 (Ala. 1988) (Citations omitted.)
Contracts of insane persons are absolutely void (Williamson v. Matthews, 379 So.2d 1245 (Ala. 1980)), and a contract executed before the maker's adjudication of insanity or appointment of a guardian is suspect when it appears that apparent consent to the contract may have been unreal because of mental incapacity:
 "It is essential to the validity of a contract that the parties thereto possess not only the legal status affording capacity to contract, . . . but also the mental competence affording capacity to consent. The rule which has been said to be well stated in Corpus Juris Secundum is that to make a valid contract, each party must be of sufficient mental capacity to appreciate the effect of what he is doing, and must also be able to exercise his will with reference thereto. A court of equity guards with jealous care all contracts with persons of unsound mind. In this connection, it has been said that 'insanity' and 'incompetence' are words of vague and varying import.
 "There is no contract where one of the parties was, by reason of physical debility, age, mental aberration, or otherwise, incapable of understanding and appreciating the nature, force, and effect of the agreement he is alleged to have made, as where he was unable to do so because insane, or mentally infirm, or because of incapacity resulting from lunacy, idiocy, senile dementia or imbecility, or any other defect or disease of the mind, whatever the cause, or because suffering from a degree of intoxication precluding rational thought. . . . However, mere mental weakness falling short of incapacity to appreciate the business in hand will not invalidate a contract, nor will mere mental weakness or unsoundness to some degree, in the absence of fraud or undue influence.
 "Physical condition not adversely affecting mental competence is immaterial; and neither age, sickness, extreme distress, nor debility of body will affect the capacity to make a contract if sufficient intelligence remains to understand the transaction."
17 C.J.S. Contracts § 133(1), at 855-57 (1963). We recognize, however, that a person's contract will not necessarily be invalidated because he was aged, mentally weak, and feeble in mind; or suffered from loss of memory, senile dementia, fatigue, or ill health.
 "Where, however, mental weakness or incapacity is accompanied by other inequitable incidents, it may afford ground for invalidation of the contract, as where, in addition to mental weakness or incapacity, it further appears that there was inadequacy of consideration or a confidential relationship, or fraud, duress, undue influence, imposition, concealment, misrepresentation, overreaching, overexercise of authority, ignorance and want of advice, or even unfairness; mental weakness may render a person more susceptible to these factors."
17 C.J.S. Contracts § 133(1), at 858-59 (1963). Consequently, a contract cannot be avoided on ground of mental incapacity or weakness unless it is shown that the incapacity was of such a character that, at the time of execution, "the person had no reasonable perception or understanding of the nature and terms of the contract (Williamson, 379 So.2d at 1247)," or the incapacity was accompanied by, inter alia, undue influence.
Testimony at the trial from George Lloyd's physician indicated that in April 1987, before executing the change of beneficiary form, he was suffering from mental instability and the onset of chronic dementia (mental deterioration or senility). Olivia Lloyd and George Lloyd remarried in August 1987, and, shortly thereafter, Olivia Lloyd obtained the change of beneficiary form for George Lloyd to sign. We note that Olivia Lloyd testified that she "couldn't say" that George Lloyd "knew what he was doing" on the day he signed the form; and George Lloyd's mental condition was apparently deteriorating to the extent that a guardian was appointed at the time he was declared non compos mentis *Page 960 
one month after the execution of the form.
Therefore, we believe that sufficient evidence existed to support the trial court's finding that George Lloyd was incapable of understanding and appreciating the nature and effect of the change of beneficiary form that he signed. Thus, its order that Jordan and Pitts be renamed as beneficiaries of the annuity is not plainly erroneous or manifestly unjust, and it is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.