BEATTY, Retired Justice.
Andrew Scott, as conservator of the estate of Joe Nathan Varner, appealed to the Alabama Supreme Court from the circuit court’s “Final Order on Accounting,” dated March 20,1998. Our supreme court transferred the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Scott contends that the trial court committed reversible error when it failed to hold Ruth Ann Kelley, as former guardian of Joe Nathan Varner and as former co-conservator of his estate, and Tommie Sue Tuck, as former co-conservator of the estate of Joe Nathan Varner, strictly liable for unaccounted property from Varner’s estate. We reverse the trial court’s judgment and remand the case.
In October 1988, Joe Nathan Varner sustained severe head injuries in an. on-the-job accident when he fell approximately 30 feet from a roof. Varner was 30 years of age at the time of his injury.
In April 1991, Ruth Ann Kelley and Tommie Sue Tuck, Varner’s sisters, petitioned the Tallapoosa Probate Court to appoint them as co-conservators of Var-ner’s estate because, they alleged, Varner was incapable of handling his property and his business affairs. After a hearing, the probate court issued an order appointing Kelley and Tuck as co-conservators for Varner.
Later, in August 1992, the parties settled Varner’s personal injury lawsuit that was filed as a result of his October 1988 *873 accident. The total settlement was $700,-000. After attorney fees and expenses were deducted from the settlement proceeds, there was a balance of $337,857.14. Of that amount, $244,576.00 was used to purchase an annuity, that will pay Varner $1,500 per month for life with a 30-year guarantee. Varner received $93,281.14 in cash from the settlement proceeds; $68,-281.14 was used to purchase a certificate of deposit and the remaining $25,000.00 was placed in an interest-bearing checking account. That account was listed as “Tommie Sue Tuck and Ruth Ann Kelley, as co-conservators of Joe Nathan Varner” (hereinafter referred to as the “conservatorship account”). The interest from the certificate of deposit was deposited directly into the conservatorship account.
In May 1993, Varner received a lump-sum settlement of his workers’ compensation claim in the amount of $34,646.69. Of this amount, $34,000 was deposited in a checking account which was listed in the name of “Ruth Ann Kelley, guardian for Joe Nathan Varner” (hereinafter referred to as the “guardianship account”). Varner also received Social Security disability benefits of approximately $400 per month.
In February 1995, Varner petitioned the probate court to find that he is not incapacitated and to revoke the conservator-ship granted to Kelley and Tuck. In March 1995, Varner petitioned the probate court to compel Kelley and Tuck to file an accounting, pursuant to §§ 26-5-31 and -32, Ala.Code 1975. Varner alleged that Kelley and Tuck “have failed to file any accounting since the granting of [the] letters of conservatorship in this matter and have further failed to keep suitable records” of the monies received and disbursed by Kelley and. Tuck on behalf of Varner. The probate court issued an order, dated March 8, 1995, requiring Kelley and Tuck to file “an accounting of the monies received into said conservatorship and a detailed accounting of any and all disbursements of any of the proceeds of the estate of Joe Nathan Varner.”
On March 17, 1995, the probate court conducted a hearing on Varner’s petitions. At the conclusion of the hearing, the probate court denied the petition to revoke Varner’s non compos mentis status and the petition to revoke Kelley and Tuck’s con-servatorship. At this hearing Kelley and Tuck requested additional time to file the accounting because, they said, they had retained an accounting firm to prepare a detañed accounting and the firm needed 30 to 60 days to prepare an accurate accounting.
On March 29, 1995, Varner appealed the probate court’s March 17, 1995 order, and requested that the case be transferred to the circuit court. The probate judge signed an order removing the case from the probate court to the circuit court.
In April 1995, Varner petitioned the circuit court to substitute another conservator for Kelley and Tuck because, he said, Kelley and Tuck had “misappropriated, wasted and/or dissipated” the proceeds of his estate. Varner also petitioned the circuit court to require Kelley and Tuck to file an accounting.
In May 1995, Kelley petitioned the circuit court for final settlement of her guardianship of Varner. Kelley stated that she wished to resign as Varner’s guardian. On the same date, Kelley and Tuck petitioned the circuit court for final settlement of the conservatorship for Var-ner. Kelley and Tuck stated that they wished to resign as conservators of Var-ner’s estate. Thereafter, the circuit court consolidated aU matters pertaining to Var-ner’s estate and directed Kelley and Tuck to file an accounting.
On May 31, 1995, Kelley and Tuck filed the accounting of their conservatorship of Varner’s estate, which was prepared by an accounting firm retained to audit the proceeds of the estate. In its report, the accounting firm concluded the following: The certificate of deposit in the amount of $68,281.14 was still in existence; the annuity purchased with the majority of the *874 proceeds from the $700,000 personal injury settlement was still in existence and continued to pay $1,500 per month. The accounting firm noted that it was told that most of the monthly annuity checks had been cashed and the cash given to Varner. The accounting firm stated, “This cannot be audited.” Thirty-one checks drawn on the conservatorship account, totalling of $35,475, were written to “Cash.” The accounting firm noted that Kelley and Tuck executed an affidavit stating that these checks were cashed at the bank in Var-ner’s presence and that the proceeds were given to Varner, and stated, “This cannot be audited.” Interest on the certificate of deposit, totalling $8,562.33, had been deposited directly into the conservatorship account. In March 1995, Tuck deposited $7,000 into the conservatorship account. At the time of the audit, the balance in the conservatorship account was $7,732.60.
The accounting firm’s report also concluded: Most of Varner’s Social Security disability checks (of approximately $400 per month) had been deposited into the guardianship account. In May 1993, $34,-000 (from Varner’s workers’ compensation settlement of $34,646.69) had been deposited into the guardianship account and during that same month a check for $23,395.79 had been drawn on the guardianship account to pay off the mortgage on Varner’s mother’s home. At the time of the audit, the balance in the guardianship account was less than $500.
In June 1995, Andrew Scott petitioned the circuit court to be appointed as conservator for Varner. In August 1995, the circuit court issued an order, appointing Andrew Scott as the Varner’s conservator and Thelma Allen Varner, Varner’s mother, as his guardian. Pursuant to the court’s orders, Scott gives Thelma a certain sum each month to be used for the benefit of Varner.
On August 25, 1995, Scott filed his first inventory of Varner’s estate. Kelley had closed the guardianship account and had given Scott a check in the amount of $387.02, which represented the balance of the guardianship account. Scott deposited this check into a checking account under the name of “Joe Nathan Varner by Andrew R. Scott, Conservator” (hereinafter referred to as the “Scott conservatorship account”). Scott had requested that the balance in the conservatorship account ($6,454.63) be transferred to the Scott con-servatorship account. Scott now receives Varner’s Social Security disability check of $405 and the $1,500 annuity check each month, which he deposits into the Scott conservatorship account.
In the circuit court, Scott contended that Kelley is unable to account for, and thus is liable for, $55,087.70 from the guardianship account, and that Kelley and Tuck are unable to account for, and thus are hable for, $84,986.13 from the conservatorship account.
In March 1998, the circuit court issued its “Final Order on Accounting,” wherein it determined “that [Kelley and Tuck] respectively must account for the following:
“a) The $25,000 which was placed into the conservatorship account;
“b) The $34,000 which was placed into the guardianship account;
“c) Interest on the conservatorship account;
“d) Interest on the certificate of deposit;
“e) Receipts of proceeds of the annuity; and
“f) Social Security benefits.”
The circuit court noted that Kelley and Tuck “did not appropriately document the transactions involving receipts and disbursements into and from the accounts that they maintained.” In fact, the circuit court stated, “The documentary evidence is so appallingly inadequate that it would serve little purpose to attempt to set forth those accounts and summarize them.”
The circuit court’s order also stated, in part:
*875 “The present action calls for an accounting from [Kelley and Tuck], [Kelley and Tuck] are fiduciaries; and, generally speaking, the burden of proof rests with the fiduciaries to show that they have appropriately used all funds received and expended by them for the benefit of [Varner]. As mentioned previously, [Kelley and Tuck] failed to maintain discrete records so as to enable the court to verify the expenditures and to show that all funds which passed through their hands were used for the benefit of [Varner]. [Scott] strenuously contends that the fiduciaries are strictly liable for all funds which they cannot account. The contention of [Scott] has strong support in the law.
“However, this court finds that there are larger equities involved in this matter. [Varner] is a black male who was 36 years of age at the time of the filing of this petition. [Kelley and Tuck] are his sisters. They are not educated people. [Varner] is alive and well today. He has received medical attention. He has been provided clothing, and he has been provided food. Although he is non compos mentis, he poses no immediate threat to himself or others; but, no doubt, he is extremely difficult to manage in a home setting. He likes to wander off and do things his own way. Given the opportunity, [Varner] would squander or otherwise be relieved of his funds in very short order. The annuity provided for [Varner] is intact, and there is no serious question that it is a sound investment. The annuity was, in fact, structured by the attorneys. Likewise, [Varner] continues to receive Social Security benefits. He also continues to receive interest on the certificate of deposit which remains intact. From the outset, there has been a recognition that it is appropriate to allow [Kelley and Tuck] or other relatives to receive a certain amount of funds each month which is discretionary and require no further accounting. During the time that this matter has been under the watchful eye of [the circuit] court, the amount of discretionary funds has gradually increased from $500.00 per month to $1,200.00 per month....
“The undersigned judge is convinced that it was reasonable from the outset that the entire amount of monthly annuity and Social Security benefits and interest received should have fallen within the category of discretionary funds.... To maintain [Varner] in any institutional setting would probably cost more than the amount of monthly receipts from Social Security, the annuity, and interest, all of which are intended as subsistence for [Varner]. The court, therefore, finds that it is appropriate to treat the monthly receipts entirely differently from the lump-sum benefits received by [Varner]; and the court finds that the entire amount of monthly receipts were discretionary funds and that [Kelley and Tuck] need not further account for such discretionary funds. To find otherwise would effectively drive a wedge between [Varner] and the members of his immediate family who have the greatest natural interest in his welfare and who, with all their faults, have been there for [Var-ner].
“The lump sums received by [Kelley and Tuck] require a somewhat different treatment and their use of the lump sums received by them cannot be explained or treated in the same manner as the monthly amounts received for subsistence. After all, an adequate amount was being received by [Kelley and Tuck] for [the] subsistence of [Var-ner]. Therefore, all expenditures of lump sums received would require some form of explanation. The question then that is presented is what did [Kelley and Tuck] do with the lump sums they received.”
As previously noted, $34,000 from Var-ner’s workers’ compensation lump-sum settlement was deposited into the guardianship account, and $23,395.79 was deducted from this account to pay off the *876 mortgage on Varner’s mother’s house. The circuit court determined that this was an appropriate expenditure and that it was in Varner’s best interest because the property is now vested in Varner and Thelma as tenants in common without right of survivorship. However, the circuit court concluded that this was the only legitimate deduction from the $34,000 deposited into the guardianship account and that Kelley is liable in the amount of $10,217.19, plus interest.
The circuit court concluded that none of the expenditures of the $25,000 received from the personal injury settlement and placed in the conservatorship account were legitimate and that Kelley and Tuck were liable in the amount of $15,545.37, plus interest.
Sections 26-5-8, 26-5-10, and 26-5-11, Ala.Code 1975, set forth the procedure to be followed when a conservator is filing a final accounting. Section 26-5-8 states, in part: “The conservator ... must file ... a full account of the conservatorship, accompanied by vouchers and verified by affidavit.” Section 26-5-10 states:
“On the day appointed or on any other day to which the settlement may be continued, the court must proceed to examine the vouchers and to audit and state the account, requiring evidence in support of all such vouchers or items of the account as may be contested or as may not on examination appear to the court to be just and proper, such evidence to be taken by affidavit or in any other legal mode. If any voucher or item be rejected, all costs accruing on the contest or examination thereof must be taxed against the conservator or. his personal representative and not against the ward or his estate.”
Section 26-5-11 states:
“After the examination of the vouchers and the audit and statement of the account, the court must render a decree passing the same and declaring the amount due the ward, if there be any amount due him, which must be .entered of record. The account and vouchers must be recorded.”
In Hastings v. Huber, 241 Ala. 160, 162, 1 So.2d 749, 750 (1941), our supreme court stated, “It is further a rule of evidence that when a guardian files a report to which exceptions as to the items thereof are reserved, the burden of establishing the right to the credit claimed devolves on such guardian.”
On pages 24-25 his brief to this court, Scott sets forth the following argument:
“The trial court admitted that [Kelley and Tuck] were unable to properly account for the property of Mr. Varner; however, the trial court gave [Kelley and Tuck] credit for substantial sums of money, ruling [Kelley and Tuck] did not have to account for those sums. The trial court based its decision on the fact that [Varner] is alive and well. In making his decision, the trial judge noted that [Varner] is a ‘black male’ and [Kelley and Tuck] were ‘not educated.’ ... The question of race is irrelevant, and the question of the education of [Kelley and Tuck] should have been asked prior to [Kelley and Tuck’s] being appointed guardian and co-conservators....
“The trial court concluded that [Kelley and Tuck] were unable to account for their contested disbursements. The law is clear, [Kelley and Tuck], as fiduciaries, are strictly liable for property of the ward for which they cannot account. Whether [Kelley and Tuck] are black and uneducated has nothing to do with the duty they owed [Varner] and his estate as his guardian and co-conservators. The trial court’s ruling, giving [Kelley and Tuck] credit for funds which cannot be accounted, is plainly and palpably wrong. The trial court completely disregarded the standard to which guardians and conservators are held. This court must reverse the trial court’s ‘Final Order on Accounting.’ ”
We respectfully agree with Scott, and point out that the statutes in question *877 are designed for the benefit of the ward and not for the benefit of the conservator. Equity follows the law.
In light of the foregoing, we find that the circuit court’s order, giving Kelley and Tuck credit for funds for which they cannot account, was plainly and palpably wrong. Thus, the circuit court’s judgment must be, and hereby is, reversed and the cause is remanded for proceedings consistent with this opinion. It is so ordered.
The foregoing opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
All the judges concur.