907 So.2d 1043 (2004)
EMPLOYEES' RETIREMENT SYSTEM BOARD OF CONTROL and Employees' Retirement System of Alabama
v.
R. Marcus GIVHAN, as executor of the estate of Marion Callen Stothart.
2030075.
Court of Civil Appeals of Alabama.
October 8, 2004.
Certiorari Denied March 11, 2005
*1044 William F. Kelley, Jr., gen. counsel, Retirement Systems of Alabama, Montgomery, for appellants.
R. Marcus Givhan of Johnston Barton Proctor & Powell, LLP, Birmingham; and James H. Evans, Montgomery, for appellee.
Alabama Supreme Court 1040139.
PER CURIAM.
The Employees' Retirement System of Alabama ("ERS") and its Board of Control appeal from a summary judgment entered in favor of R. Marcus Givhan, as executor of the estate of Marion Callen Stothart. We reverse and remand.
During her lifetime, Stothart was a employee of the State of Alabama and a member of ERS; she was diagnosed with lung and brain cancer on February 17, 2002. On May 31, 2002, Stothart, who was 64 years old at the time, completed a form application for retirement benefits. Because Stothart had indicated to ERS her intent to retire, ERS prepared a written estimate of the potential benefits Stothart could expect to receive; that document disclosed that Stothart could expect to receive $649.06 per month for the remainder of her life, with "all benefits ceasing at" her death, if she elected the "maximum retirement allowance" permitted by law. On July 23, 2002, Stothart executed a verified "Member's Election of Retirement Benefits" form in which she indicated that she had been advised of the estimated maximum retirement allowance to which she was entitled and of "certain optional modifications thereof"; she requested the maximum retirement allowance.
Stothart retired from her employment on September 1, 2002, and died one month later on October 1, 2002. Stothart received one benefit payment in the amount of the maximum monthly retirement benefit before her death on October 1, 2002. Following Stothart's death, Givhan, Stothart's son and the executor of her estate (hereinafter "the executor"), contacted ERS; the executor was informed that Stothart had elected to receive the maximum retirement allowance and that Stothart's estate was therefore entitled only to a "one time prorata payment for the number of days that [Stothart] lived in the month of her death."
On November 19, 2002, the executor appealed from that determination to the ERS Board of Control, pursuant to Rule 800-2-3-.06, Ala. Admin. Code (Retirement Sys. of Alabama); he requested that ERS provide benefits to the estate in accordance with the actuarial equivalent benefit such that Stothart's estate would receive the amount of money Stothart had contributed to ERS during her employment plus interest. On December 4, 2002, the ERS Board of Control denied the request. On January 3, 2003, the executor filed a notice of appeal with ERS and a petition for judicial review of ERS's decision in the Montgomery Circuit Court; in his petition, the executor averred that Stothart "lacked capacity" to make an election of benefits at the time she had executed the election-of-benefits form.
*1045 On June 30, 2003, the executor moved for a summary judgment. In support of the motion, the executor presented the affidavit of Dr. Benjamin Banks Fuller. Dr. Fuller averred that he had treated Stothart to remove a cancerous tumor from her brain; that Stothart had undergone radiation therapy to the brain and chemotherapy to the widely metastatic cancer; and that Stothart was receiving multiple medications, including steroids and pain medicines, at the time she had executed the election-of-benefits form. Dr. Fuller opined that Stothart "did not have the capacity to make intelligent and voluntary decisions during the summer of 2002." The executor also presented an affidavit from a registered nurse who stated that on August 15, 2002, Stothart had been admitted to hospice care with a diagnosis of lung cancer that had metastasized to her liver and brain; that affiant also opined that, at that time, Stothart had been unable "to make voluntary and intelligent decisions on her own."
On July 23, 2003, ERS filed a cross-motion for a summary judgment based on Ex parte Employees' Retirement System Board of Control, 767 So.2d 331 (Ala.2000) ("Ex parte ERS"), a case in which the Alabama Supreme Court reversed a judgment permitting the widow of a state employee to receive retirement benefits from ERS despite her deceased husband's election to receive a maximum retirement allowance. In support of the motion, ERS presented the affidavit of Don Nelson, its director of benefits, who stated that Stothart had elected to receive the maximum retirement allowance, and the exhibits to that affidavit, which included Stothart's application for retirement, the benefits statement prepared by ERS, and Stothart's election-of-benefits form. In its summary-judgment motion, ERS argued that even if Stothart had not made an election, she would have automatically received the maximum retirement allowance pursuant to § 36-27-16(a), Ala.Code 1975.
Following a hearing on the parties' motions, the circuit court determined that Stothart, in 1991, had executed a durable power of attorney appointing the executor to act as her lawful agent in the event of her incapacity. The circuit court deemed Stothart's election-of-benefits form invalid on the basis that Stothart had lacked the mental capacity to make intelligent and voluntary decisions on her own when she signed the election-of-benefits form on July 23, 2002, and on the basis that that form had not been signed by any individuals that Stothart had authorized to act on her behalf in the event of her incapacity. Although the circuit court acknowledged the Supreme Court's decision in Ex parte ERS, the circuit court distinguished that decision on two bases: (1) the employee in Ex parte ERS lived longer than Stothart after his retirement; and (2) the employee in Ex parte ERS had not been incapacitated at the time he elected to receive the maximum retirement benefit.
The circuit court also rejected ERS's argument that, even assuming that Stothart was incapacitated at the time she signed the election-of-benefits form, she would have been due to receive, by default, the maximum retirement allowance pursuant to § 36-27-16(d). Asserting that "a court sitting in equity has broad power to fashion remedies which are equitable under given circumstances," the circuit court concluded that equity would be served by allowing the executor to choose the actuarially equivalent retirement-benefits option that the estate had requested in its petition for review; the circuit court awarded Stothart's estate the "unpaid balance" of "annuity savings" in Stothart's ERS account.
*1046 ERS appeals, arguing that Ex parte ERS is not distinguishable from the present case. ERS also has renewed its argument that under § 36-27-16(d), Ala.Code 1975, Stothart was due to receive the maximum retirement benefit even if she had not validly selected that option in her election-of-benefits form. Because ERS's second argument is dispositive of the appeal, we pretermit consideration of ERS's first argument.
Section 36-27-16(a)(1)a., Ala.Code 1975, provides, in pertinent part, that any member of the ERS who withdraws from service after reaching the age of 60 years "may retire upon written application to the [ERS] Board of Control." Section 36-27-16(a)(2), Ala.Code 1975, specifies the "maximum" service-retirement allowance payable to a retired state employee. That allowance "is paid for life and does cease at death." Employee's Retirement Sys. Of Alabama v. McKinnon, 349 So.2d 569, 573 (Ala.1977).
In lieu of receiving that maximum allowance, any ERS member may choose from among the following actuarially equivalent reduced-retirement allowance "options": (1) electing to receive annuity payments that are payable to the member and to the member's nominee(s) if the member dies before receiving payments equal to "the present value of [the] annuity as it was at the time of [the member's] retirement"; (2) electing a reduced-retirement allowance that is payable to the member and, after the member's death, to another designated person over that person's remaining lifetime; (3) electing that one-half of a member's reduced-retirement allowance be paid after the member's death to another designated person over that person's remaining lifetime; or (4) electing some other reduced-retirement-payment plan that is certified to be of equivalent actuarial value to the member's retirement allowance and approved by ERS's Board of Control. See § 36-27-16(d), Ala.Code 1975. However, that statute also provides that any election to receive a reduced-retirement benefit is to be made "prior to retirement." Ala.Code 1975, § 36-27-16(d) (emphasis added); accord, Ala. Admin. Code (Retirement Sys. of Alabama) r. 800-2-1-.03(1) (members electing to receive an optional allowance must make that election on a form duly prescribed by ERS "no later than the first of the month[] during which their retirement is to be effective"). ERS regulations provide that if ERS "is not notified of a member's election to receive an optional allowance, then such member shall automatically receive the maximum retirement allowance." Ala. Admin. Code (Retirement Sys. of Alabama) r. 800-2-1-.03(2).
Assuming, without deciding, that the circuit court correctly concluded on the record before it that Stothart's incapacity rendered her July 23, 2002, election-of-benefits form void, neither Stothart nor any other person that may have been authorized to elect any of the four optional reduced-retirement allowances pursuant to § 36-26-17(d) on her behalf elected any of those allowances and notified ERS of that election before Stothart retired on September 1, 2002. Because no such election was made at that time, the executor, whether purporting to act pursuant to his agency created under Stothart's power of attorney[1] or pursuant to letters testamentary, would have had no power to make a legally valid election on behalf of Stothart after her retirement.
We note that the circuit court was clearly moved in this case to "do equity," *1047 i.e., to alleviate a seemingly harsh result by directing ERS to make payments to the estate of a longtime State employee in lieu of enforcing the provisions of § 36-26-17. However, it is a well-settled maxim that "[e]quity follows the law." See, e.g., Scott v. Kelley, 745 So.2d 872, 877 (Ala.Civ.App.1999). Here, "the law" has been set forth by our Legislature: a valid election to receive anything other than the maximum retirement benefit, terminable upon an ERS member's death, must be made prior to the retirement of that member. Just as the Alabama Supreme Court has held that a "surprised, disappointed, or disgruntled beneficiary [may not] change an ERS member's retirement-benefits election that is clear on its face," Ex parte ERS, 767 So.2d at 335, the judiciary may not properly countenance a posthumous challenge to the sub silentio "clear, unambiguous election of retirement benefits" that has been mandated by our Legislature to apply in the absence of a contrary election by an ERS member; to permit such a challenge "would wreak havoc on the retirement system" administered by ERS. Id.
The decision of the ERS Board of Control denying payment of benefits to Stothart's estate was correct as a matter of law and should have been upheld, not reversed, by the circuit court. The judgment of the Montgomery Circuit Court is reversed, and the cause is remanded with instructions to enter a judgment in favor of ERS.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially, with writing.
YATES, P.J., dissents, with writing, which THOMPSON, J., joins.
MURDOCK, Judge, concurring specially.
I concur in the well-reasoned analysis of the main opinion. My agreement with the main opinion is bolstered by my threshold observations that (1) the Legislature clearly must have intended that a retiring member of the Employees' Retirement System be entitled to receive retirement benefits even if he or she does not exercise one of the options given to them in § 36-27-16(d), Ala.Code 1975, to select reduced retirement payments during their life in return for certain benefits payable after their death, and (2) accordingly, the Legislature likewise must have intended there to be a default as to what an employee's retirement allowance would be in the absence of such an election. The main opinion correctly identifies that default.
I write separately to explain my understanding of one particular portion of the main opinion. Specifically, near the end of the opinion is found the following:
"We note that the circuit court was clearly moved in this case to `do equity,' i.e., to alleviate a seemingly harsh result by directing ERS to make payments to the estate of a longtime State employee in lieu of enforcing the provisions of § 36-26-17. However, it is a well-settled maxim that `[e]quity follows the law.' See, e.g., Scott v. Kelley, 745 So.2d 872, 877 (Ala.Civ.App.1999)."
907 So.2d at 1046-47. I write separately to explain that I construe the foregoing not as a statement that this case is governed by equity, rather than law, but instead as merely a comment that, even if equity were somehow to govern the outcome of this case, that equity would have to "follow the law." Given the particular facts in this case, it is unfortunate for the beneficiaries of Stothart's estate that the *1048 outcome of the case is controlled by that law, but it is.
YATES, Presiding Judge, dissenting.
Section 36-27-16, Ala.Code 1975, provides, in pertinent part:
"(a)(1) Retirement, Etc., Of Employees Generally; Eligibility For Service Retirement Benefits.
"a. Any member who withdraws from service upon or after attainment of age 60 may retire upon written application to the Board of Control setting forth at what time, not less than 30 days nor more than 90 days subsequent to the execution and filing thereof, he desires to be retired; provided, that any such member who became a member on or after October 1, 1963, shall have completed 10 or more years of creditable service; provided further, that a member employed as a state policeman shall be eligible to file application of service retirement upon attaining age 52.
"b. Any member who has attained age 60, or age 52 in the case of a state policeman, and has previously withdrawn from service may retire upon written application to the Board of Control setting forth at what time, not less than 30 days nor more than 90 days subsequent to the execution and filing thereof, he desires to be retired; provided, said member shall have at the time of his withdrawal from service completed the age and service requirements established by the Board of Control for eligibility for deferred benefits; provided, that such minimum number of years of creditable service shall not be less than 10 years nor more than 25 years.
"c. In addition to any law or part of law relating to service retirement under the Employees' Retirement System of Alabama, any member of the Employees' Retirement System who withdraws from service after completion of not less than 25 years of creditable service may retire without a reduction in retirement allowance upon written application to the Board of Control of the Employees' Retirement System setting forth the first day of which month, not less than 30 days or more than 90 days subsequent to the execution and filing thereof, he desires to be retired, provided that no person whose employer participates in the Employees' Retirement System under Section 36-27-6 shall be entitled to the benefits provided in this paragraph unless such employer elects to come under the provisions of said paragraph. Any employer making such election must bear the cost of such benefit.
". . . .
"(d) Optional allowances. With the provision that the election of an option shall be effective on the effective date of retirement, any member may elect prior to retirement to receive, in lieu of his retirement allowance payable throughout life, the actuarial equivalent, at that time, of his retirement allowance in a reduced retirement allowance payable throughout life with the provisions that:
"(1) Option 1. If he dies before he has received in annuity payments the present value of his annuity as it was at the time of his retirement, the balance shall be paid to his legal representatives or to such person as he shall nominate by written designation duly acknowledged and filed with the Board of Control;
"(2) Option 2. Upon his death, his reduced retirement allowance shall be continued throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the Board *1049 of Control at the time of his retirement;
"(3) Option 3. Upon his death, one half of his reduced allowance shall be continued throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the Board of Control at the time of his retirement; or
"(4) Option 4. Some other benefit or benefits shall be paid either to the member or to such person or persons as he shall nominate; provided, that such other benefits, together with the reduced retirement allowance, shall be certified by the actuary to be of equivalent actuarial value to his retirement allowance and shall be approved by the Board of Control."
I disagree with ERS's argument that § 36-27-16(a) and (d) requires that Stothart receive the maximum retirement allowance in the event her election was void. Section 36-27-16 provides for payment of the maximum retirement allowance when a retiree fails to make an election. Here, Stothart did not fail to make an election; rather, she executed an election form while she was mentally incapacitated. Stothart timely submitted an election-of-benefits form before her retirement, as required by the statute; however, she was without the mental capacity to understand the nature of the form. Section 36-27-16(d) provides that a retiree may make an election to select an actuarial equivalent of his retirement allowance "in lieu of his retirement allowance payable throughout life." There is nothing in § 36-27-16 that addresses the factual situation where a retiree makes a timely election but that election is void because of mental incapacity. Further, ERS's benefit-selection form seems to contradict its position, because there would be no reason for an employee to affirmatively select "maximum retirement allowance" on the form before retirement. Also, I note that in Employee's Retirement System of Alabama v. McKinnon, 349 So.2d 569 (Ala.1977), the employee filled out two forms concerning retirement benefits, selecting a different benefit payment on each form. The supreme court stated that the parties could on remand further develop the factual issue whether the retiree was mistaken in marking conflicting choices on his retirement forms.
"If the trial court determines on remand that [the retiree] intended to select one of the [actuarial-equivalent] options, then in that event, it is the law that he made the selection with the condition attached that if he died before the end of the month following the effective date of retirement, which he did, an allowance would be paid to the surviving spouse. . . ."
349 So.2d at 573. Nothing in McKinnon indicates that § 36-27-16(d) is automatically triggered if the election form is conflicting, void, or invalid. Accordingly, I must respectfully dissent.
I also write to note that I disagree with ERS's argument that Ex parte Employees' Retirement System Board of Control, 767 So.2d 331 (Ala.2000), addresses the same factual situation as the present case. In Ex parte Employees' Retirement System Board of Control, the State employee executed a selection-of-benefits form in December 1992, selecting the maximum retirement benefit before he retired on January 1, 1993. In October 1995, the employee died, and his widow asked ERS to change the election; the ERS Board of Control denied the widow's request. The employee's widow sought review, alleging that the employee suffered from hepatic encephalopathy when he elected his retirement benefits. One doctor testified that hepatic encephalopathy can cause loss of *1050 memory and confusion. Another doctor testified that he saw mental impairment in the employee in late 1993 and that there was a high probability that in late 1992 the employee suffered from a brain dysfunction. The Public Employees Benefit Service Corporation ("PEBSCO") representative who had discussed the various options with the employee testified that the employee had decided that an actuarially equivalent option was in the employee's best interest, and the representative stated that she did not have any concerns about the employee's mental ability. ERS presented evidence that the employee had had his highest job-performance review in 1992 and that there had been no challenge to the employee's election before his death.
The trial court in Ex parte Employees' Retirement System Board of Control, supra, entered a judgment in favor of the widow, finding that the employee had elected the maximum retirement allowance by mistake. The trial court concluded that when the employee "made his election he was suffering from the effects of hepatic encephalopathy and that he had lost some of his intellectual and reasoning capacity as a result of his illness." 767 So.2d at 333. This court affirmed the trial court's judgment without an opinion.
ERS sought certiorari review, arguing that this court's affirmance conflicted with McKinnon, 349 So.2d 569. In McKinnon, the employee filled out two forms concerning retirement benefits, selecting a different benefit payment on each form. The supreme court in McKinnon reversed the trial court's judgment and noted that on remand the parties could further develop the factual issue of the employee's intent.
The supreme court discussed McKinnon in Ex parte Employees' Retirement System Board of Control, 767 So.2d at 334-35, and ultimately concluded:
"McKinnon states that the Board of Control `should try to ascertain the intent of its members when they apply and [to] carry out that intent if allowed by law, so that the members will receive all benefits provided by law.' 349 So.2d at 574 (emphasis in original). We agree that ERS should carry out its members' intent. Once a recipient has made a benefit election, however, if that election is clear on its face then ERS should be able to rely on that election.
"In this case, [the employee]'s intent is clear from the face of his `Member's Election of Retirement Benefits' form. He clearly marked only the box labeled `Maximum Retirement Allowance.' When ERS receives a clear and unambiguous election-of-benefits form, we will not require ERS to look beyond the face of the form. This Court has applied this principle in cases involving other documents. This Court has stated that in interpreting a will `[e]xtrinsic evidence is not admissible to vary, contradict or add to the plain and unambiguous language of the will.' Cook v. Morton, 254 Ala. 112, 116, 47 So.2d 471, 474 (1950). This Court has often stated that it will not look beyond the four corners of an instrument unless the instrument contains latent ambiguities. Martin v. First Nat'l Bank of Mobile, 412 So.2d 250, 253 (Ala.1982). [The employee]'s benefits-election form was unambiguous, and ERS carried out what appears to have been his clearly stated intent."
The supreme court also noted that McKinnon was distinguishable from the facts in Ex parte Employees' Retirement Board of Control, because in McKinnon there was no indication that anyone from the retirement system personally explained the retirement-benefit choices available to the employee.
*1051 The present case is distinguishable from Ex parte Employees' Retirement Board of Control, because in that case the trial court did not conclude that the employee was mentally incapacitated at the time he signed the retirement election form. Instead, it found that the employee had elected the maximum allowance by mistake and that at the time he made his election he had lost some of his reasoning and intellectual capacity. Ex parte Employees' Retirement Board of Control is also distinguishable because in that case the employee made his election almost three years before his death and because a PEBSCO representative discussed the elections available and did not have any concerns about the employee's mental capacity. Also, the supreme court in Ex parte Employees' Retirement System Board of Control cites McKinnon, where the issue was not mental capacity but a mistake in marking the benefit form. The supreme court also cited Cook v. Morton, 254 Ala. 112, 47 So.2d 471 (1950), and Martin v. First National Bank of Mobile, 412 So.2d 250 (Ala.1982), neither of which concerned mental incapacity but instead involved alleged ambiguities in the decedent's will.
For a contract to be void on the ground of mental incapacity, the person alleged to have been incompetent at the time of the contract was executed must have "`had no reasonable perception or understanding of the nature and terms of the contract.'" Lloyd v. Jordan, 544 So.2d 957, 959 (Ala.1989)(quoting Williamson v. Matthews, 379 So.2d 1245, 1247 (Ala.1980)). In Lloyd, the daughters of the deceased, who owned an annuity, petitioned the probate court for an order designating them as beneficiaries of their father's annuity. The daughters presented testimony from their father's physician that at the time their father changed his beneficiary form he was incapable of understanding and appreciating the nature and effect of the change-of-beneficiary form.
In Queen v. Belcher, 888 So.2d 472 (Ala.2003), the father executed a power of attorney, as well as partnership and trust agreements. Three of the father's four children challenged the standard the trial court used in determining that the father had the mental capacity to execute the documents. Our supreme court held that the correct standard for determining whether the father had the mental capacity to execute the power of attorney as well as the partnership and trust agreements was whether the father "`was unable to understand and comprehend what he was doing' at the time he signed the power of attorney and the partnership and trust agreements." Queen, 888 So.2d at 477 (quoting Thomas v. Neal, 600 So.2d 1000, 1001 (Ala.1992)).
In Morris v. Jackson, 733 So.2d 897 (Ala.Civ.App.1999), an action was brought to set aside a power of attorney executed in favor of the testator's granddaughter. The trial court set aside the power of attorney, finding that the testator was incompetent when he executed the form.
"In order to void an action on the ground of mental incapacity, the party challenging the action must show that the person was unable to understand or comprehend [what] he was doing. Thomas v. Neal, 600 So.2d 1000 (Ala.1992). The person's mind must have been so impaired that he was incapable of acting either intelligently or voluntarily. Id."
733 So.2d at 898. The testator's physician in Morris testified that the testator had lung cancer and was on such heavy pain medication that he was incompetent. This court held that the record supported the trial court's finding of incompetency.
On a motion for a summary judgment, when the nonmovant offers no evidence to *1052 contradict that presented by the movant, the movant's evidence is treated by the trial court as uncontroverted. Griffin v. American Bank, 628 So.2d 540 (Ala.1993)(plaintiff/bank was entitled to recover from defendant/borrower where there was no evidence to contradict that presented by the plaintiff/bank). In the present case, the evidence was uncontroverted that Stothart was mentally incapable of making intelligent and voluntary decisions. In contrast to Ex parte Employees' Retirement System Board of Control, the circuit court in this case clearly made a finding of mental incapacity and voided Stothart's election form on that basis alone. Because the evidence shows that Stothart was so impaired by her treatment of radiation, chemotherapy, and pain medication that she was incapable of understanding the election form, I cannot say that the trial court erred in determining that there was substantial evidence to warrant voiding Stothart's July 23, 2003, election form.
I cannot say that it was outside the circuit court's jurisdiction to grant the equitable relief sought by Givhan. "The trial court has the power to mold its decree `so as to adjust the equities of all parties and to meet the obvious necessities of each situation.'" Clark v. Cowart, 445 So.2d 884, 888 (Ala.1984)(quoting Coupounas v. Morad, 380 So.2d 800, 803 (Ala.1980)). "There is no doubt that any retirement system depends for its soundness on an actuarial experience based on the purely prospective selections of benefits and mortality rates among the covered group, and that retrospective or adverse selection after the fact would be destructive of a sound system." Ortelere v. Teachers' Retirement Bd. of the City of New York, 25 N.Y.2d 196, 198, 250 N.E.2d 460, 461, 303 N.Y.S.2d 362, 364 (1969)(allowing retiree's husband to set aside retiree's election because of mental illness). Although ERS needs to be able to rely on choices made by its members, "`[a] court of equity guards with jealous care all contracts with persons of unsound mind.'" Lloyd v. Jordan, 544 So.2d at 959 (quoting 17 C.J.S. Contracts § 133(1) at 855-57 (1963)).
THOMPSON, J., concurs.
NOTES
[1] Such agency would arguably have been revoked upon the death of the principal, i.e., Stothart. See Streit v. Wilkerson, 186 Ala. 88, 91, 65 So. 164, 165 (1914).